MICHAEL KEANE B/N/F RICHARD L. KEANE V.
RICHARD SCHROEDER.

[No. 569A86. Filed November 30, 1970. No petition for rehearing filed.]

132

*Thomas M. Moorhead,* of Fort Wayne, for appellants.

*Livingston, Dildine, Haynie & Yoder,* of Fort Wayne, for appellee.

LOWDERMILK, C.J.—The case of Michael Keane, by his next friend, versus Schroeder was at issue on plaintiff's second amended complaint in one paragraph, and appellee's answer in four paragraphs, the first being in compliance with Supreme Court Rule 1-3. The second paragraph of answer was filed to pleading paragraph 2, which was dismissed and is not before the court. The third paragraph alleged defendant-appellee's dog was secured and the fourth paragraph alleged appellant, a four year old boy, to be a trespasser or licensee on premises of appellee and that appellee owed no duty to appellant other than to refrain from any willful or wanton act which would result in injury to appellant.

To the affirmative paragraphs of answer the plaintiff-appellant filed reply, pursuant to Rule 1-3.

In the case of Richard L. Keane v. Richard Schroeder the issues were formed by plaintiff-appellant's amended complaint alleging appellant to be the father of the appellant Michael Keane, and otherwise the same allegations as those alleged in Michael's second amended complaint. The alleged damages were hospital and medical expenses rather than personal injuries as alleged in Michael's second amended complaint.

To appellant Richard L. Keane's amended complaint appellee filed answer in three paragraphs, of which the first was in

compliance with Rule 1-3 of the Supreme Court; the second paragraph alleged appellee's dog was secured and the third paragraph alleged appellant Michael Keane to be a trespasser or licensee in identical language as the answer to Michael's complaint.

Appellant filed his reply to the second and third paragraphs of answer, pursuant to Supreme Court Rule 1-3.

The causes of action were consolidated; a trial was had by jury and at the close of appellant's evidence appellee filed a motion for directed verdict in each case, which was, in each case, sustained by the court. The jury, in compliance with the court's instruction, returned its verdict in each case for the defendant-appellee and on which the court timely entered its judgment that appellant, in each case, take nothing.

Appellants timely filed their respective motions for new trial on the grounds that: (1) The verdict and decision of the court is contrary to law; (2) Error of law occurring at the trial, in that the court sustained defendant's motion for directed verdict for defendant, and (3) Error of law occurring at the trial in the court directing the jury to return a verdict for the defendant.

Respective motions for new trial were overruled, after which appellants timely prayed an appeal, which was granted in each case.

In the motions for new trial appellants assigned as error in each cause that the court erred in overruling appellant's motion for new trial.

The complaints alleged that Michael Keane was a four year old boy; that the appellee kept a chow dog which he knew had bitten a five year old girl prior to biting appellant Michael Keane, that the dog was vicious and appellee knew he was vicious; that appellee knew small children could and would come into contact with the dog and that appellant was injured by the dog and thereby sustained damages.

Basically, the facts are that the parties lived on the same block in Fort Wayne, Indiana, with the homes about directly opposite, but on separate streets paralleling one another.

The appellee kept a reddish-orange chow dog which weighed about 65 pounds in his backyard, which was enclosed with a house and garage on two sides and by a woven wire fence approximately three to three and one-half feet high on the remaining two sides. This dog was permitted to use the entire area of the backyard, having access thereto by a leash, which leash was affixed to a clothes line between the said buildings. The dog could not, while on the leash, get outside the yard.

In the yard was a swing, teeter-totter board and ladder arrangement, a tractor tire filled with sand, and also several bicycles. This yard was a good playground for appellee's children and other children in the neighborhood, including appellant, Michael Keane, and was freely used by such children at about all reasonable playtime hours for children. In the fence there was a gate near the house which small children the age of the appellant, Michael, were capable of opening.

On the 19th day of June, 1964, one Rhonda Miller, a five year old neighborhood girl, was bitten by appellee's chow dog while she was playing in appellee's backyard. Appellee had knowledge, and testified, that Rhonda Miller had been bitten by his dog.

As the result of the dog bite, Rhonda Miller sustained a deep tear mark under her eye about two inches in length and at the end of her cheek she sustained a two inch tear mark, as well as a dozen or more holes, in and out holes, in one side of her cheek and her nostrils were torn loose from either side. The nose was pulled loose from the bone structure and the dog's fangs had gone through her upper lip, her gums. She also had a deep hole that had gone right by and had just missed her jugular vein. She lost much blood at the time of her injuries.

Following the biting of Rhonda Miller by the dog, neighborhood children continued to play in appellee's yard with the dog chained on the wire, as aforesaid.

On October 28, 1964, appellant, Michael Keane, was playing in appellee's backyard alone, except for the presence of the chow dog, Toby, when a neighborhood girl heard him scream and looked into appellee's yard and saw the dog, Toby, biting Michael and attacking him. At this time a male neighbor who had lived in the neighborhood 22 years heard what sounded to him like a bunch of dogs fighting and went to the Schroeder yard where he could see through the fence and saw the chow dog down on Michael. The neighbor yelled to the dog to no avail, but appellee's daughter came out of the house and rescued Michael from the dog. Appellee's daughter, after rescuing appellant, Michael, handed him over the fence to this neighbor and the dog still jumped for the boy, trying to get at him, and was repulsed in his efforts by striking the end of his leash before he could reach the boy. At the time the dog was attacking appellant, Michael, Michael was in a squatting position and had his hands over his head in an attempt to protect himself, with the dog's paws on the boy's shoulders and the dog biting him on the head.

The dog, Toby, refused to obey the order of appellee's daughter to leave the boy alone, as she approached in her efforts to rescue the boy.

As the result of the attack the boy was cut on the scalp with cuts looking like they had been made by a razor blade, with the skin laid wide open. The dog was larger than and out-weighed the appellant, Michael Keane, and the entire attack took place in the backyard of appellee's property, with the dog leashed on his wire and inside the fence.

At the time appellant, Michael Keane, went to the yard of the appellee he was wearing a fire engine red plastic helmet put out by a gasoline company. This helmet was equipped with

a speaker or amplifying device to amplify the voice of its wearer. Appellee further contends that the second bite, which was the biting of Michael Keane, was probably provoked by appellant, Michael Keane's, use of such bright red helmet equipped with a microphone and amplifier in close proximity to the dog when it was leashed to the clothes line in the fenced enclosure. Appellee further contends appellants wholly failed to establish that the biting of Michael was unprovoked.

We can find nothing in the record to indicate whether the amplifier was in working condition and we cannot find in the record that the appellant, Michael Keane, amplified his voice by use of the helmet and amplifier.

Appellee contends that before a prima facie case is established, it must be shown by substantive evidence of probative value:

(1) That the defendant kept and maintained a dog with "vicious" or "dangerous" propensities.

(2) That the defendant either knew, or in the exercise of reasonable care, should have known, of such "vicious" or "dangerous" propensities in the dog.

(3) That the defendant, with such knowledge, failed to keep the dog secure.

We agree that the biting of a person by a dog upon provocation is not sufficient to establish a vicious disposition of the dog. However, we can find no evidence in the record that Michael Keane provoked the dog, as the first knowledge of Michael Keane's being in the appellee's backyard with the dog came to those who heard the dog attacking Michael.

Appellee cites many cases to the effect that sudden pain or fright sometimes causes a dog to snap involuntarily. Circumstances must be considered in such a case to determine whether a dog, under such sudden pain or fright, which has previously bitten someone, is of a vicious or dangerous character and all

surrounding facts and circumstances must be considered and the question addressed to the sound discretion of the court or jury.

The law in Indiana is that triers of the fact shall take into consideration their experiences in the ordinary affairs of the life of men in arriving at their finding and verdict, and this is so well settled that it needs no citation of authority. This court, has heretofore said, in *Davoust* v. *Mitchell* (1970), 146 Ind. App. 536, 257 N. E. 2d 332, 336:

> ". . . the trial court could consider the ordinary affairs in the lives of men and women and although this court cannot and does not weigh the evidence, we are of the opinion that in deciding whether the evidence is sufficient to sustain the judgment, that we, too, may consider things that happen in the ordinary affairs of life and men."

And in so doing, we are of the opinion that a dog, which, through sudden pain or fright involuntarily snaps for its own protection is not necessarily vicious, nor does it necessarily have vicious propensities. On the other hand, a dog which may, through sudden pain or fright, involuntarily snap and having done so then proceeds in a vicious attempt to emasculate its victim, who may have unintentionally or inadvertently caused the dog pain or fright, is demonstrating a vicious propensity. Were a dog docile and did not have vicious propensities, the involuntary snap after the pain or startling of the dog would be the last unfriendly act of the dog, as it would be expected, as a nonvicious dog, to recognize its surroundings and have no desire to or make any effort to injure or mutilate.

The sole question involved in this appeal is the propriety of the trial court's sustaining appellee's motion for a directed verdict at the close of appellants' evidence. In order to determine these cases it is necessary for us to discuss the following points:

1. The legal status of the appellant, Michael Keane, a four year old child *non sui juris* while he was on the appellee's

property and the duty arising therefrom and any breach of such duty.

2. The vicious propensities of appellee's dog and appellee's knowledge of such prior to the date of injury of appellant, Michael Keane.

3. The proper function of a directed verdict.

Appellants contend that appellant Michael Keane was on appellee's premises as an invitee, while the appellee contends that appellant Michael Keane was in appellee's yard as a licensee at sufferance.

This court said, in the case of *Wozniczka* v. *McKean* (1969), 144 Ind. App. 471, 247 N. E. 2d 215, 221, Transfer denied August 27, 1969:

". . . the status of the Appellant, at most, was that of a licensee by permission or sufferance. The general duty owed a licensee or licensee by permission or sufferance is accurately stated in West's Indiana Law Encyclopedia, Vol. 21, § 36, Negligence, at page 295, which states:

'The duty owed by a person who owns or is in charge of premises to another on such premises as a licensee without invitation, express or implied, has been said to be the same as the duty owed by him to a trespasser. Generally there is no affirmative duty to exercise care with respect to a mere licensee or licensee by permission, and no duty to protect him from injury. The usual statement of the general rule is that the only duty an owner or occupant of premises owes to a bare licensee thereon is not to injure him willfully or wantonly.

'The owner or occupant of premises is not under any legal duty to a mere licensee to keep the premises free or safe from dangers of obstructions, pitfalls, excavations, trapdoors, or openings in floors. A licensee by permission or a mere licensee takes premises as he finds them and he goes there at his own risk and enjoys the license subject to its concomitant perils, and the owner is not liable for any injuries resulting to him owing to defects in the conditions of the premises.

'On the other hand, if the owner of premises discovers the presence of a licensee in a situation of peril, he may

not do an affirmative act which might reasonably be expected to increase the peril, and he should use reasonable care to avoid injuring the licensee after his danger is discovered. Likewise the owner has the duty not to set traps for a licensee, not knowingly to expose him to a hidden peril, and to protect him from active negligence.' "

This court, in *Wozniczka* v. *McKean, supra,* held, in discussing the duty due a licensee, where, in such case the plaintiff was a five year old child, *non sui juris,* as follows:

"There are two areas of extension to the general rule stated as to licensees or licensees by permission or sufferance. The factual context of the cases in these two areas of extension are often similar and sometimes indistinguishable. One of these extensions is the doctrine of attractive nuisance. In this regard both of the parties agree that this is not an attractive nuisance case and that the Plaintiff-Appellant is not attempting to recover upon an attractive nuisance theory. A second extension is reflected in § 40 at page 301 of West's Indiana Law Encyclopedia, which states:

'The rule that one is bound to exercise ordinary care to avoid injury to a mere licensee or trespasser who is discovered in a position or situation of peril, as considered supra §§ 36-38, applies with respect to children of tender years, and knowledge, actual or constructive, of the presence of an infant licensee or trespasser in a position of peril imposes on the owner or occupant of premises the duty to exercise reasonable care in the use of his property so as not to injure the child, and the amount of care required to be exercised may be greater than that necessary in the case of an adult.

'The probable presence of children on property where a dangerous activity is being carried on, imposes a duty of ordinary care on the owner of such property to anticipate their presence by keeping a lookout for them, and such duty applies not only with respect to children under seven years of age, but may apply to older children whose presence the owner has reason to expect. If he is bound to know of the presence of children he must also know from common experience that they are frequently heedless of danger, and he should not start in motion something that is likely to cause their injury. If the probable presence of children on the premises raises a

duty to them of ordinary care, such duty may be violated before the children arrive on the premises, by leaving things undone which should have been done in anticipation of their coming, but the duty of care arising from the probable presence of children on the premises is relative rather than absolute.'

"The general common law duty is well stated in 65 C.J.S. Negligence § 63 (58) at page 779, which states:

'Generally, a person exposing dangerous articles or instrumentalities on his premises in such a manner that children are likely to come in contact therewith to their obvious danger should reasonably anticipate the injury that is likely to occur and is bound to take reasonable care to prevent it. * * * *This duty may exist even though the dangerous thing is not an attractive nuisance.'* " (Our emphasis.)

In *Brown* v. *Kujawa* (1968), 142 Ind. App. 310, 234 N. E. 2d 509, at page 510, Transfer denied May 14, 1968, a licensee was identified as follows:

"A licensee is one '* * * who, for his own convenience, curiosity, or entertainment, goes upon the premises of another by his (the owner's or occupant's) permission of sufferance.' [Citing cases.]"

In *Cleveland, etc., R. Co.* v. *Means* (1914), 59 Ind. App. 383, 405, 104 N. E. 785, 792, this court stated:

"The owner of the premises owes the adult licensee no duty of active vigilance to discover his presence or his surroundings while on his premises by permission only, because such adult is presumed to go there with the understanding that he will take the premises as they are, with all the uses to which the owner may subject them while there, and that he will look after his own safety and welfare, and that he has discretion and judgment to do so. In other words, the owner of the premises does not know and has no reason to anticipate that such adult licensee will place himself in a situation of peril. To indulge such an assumption when a child licensee of immature years, judgment, and discretion is involved would be against our common understanding and reason and lacking in every element of humanity and justice. Constructive knowledge on the part of a railroad company that children *non sui juris* are on its

tracks, or probably will be on its tracks, at a particular place, of necessity, carries with it knowledge of the peril or probable peril and helpless condition of such children, and hence the vigilance or care, which in the first instance was only negative in character, may become affirmative in the second instance and require that the company in such case shall, in some degree, at least, exercise for the child the care and vigilance which it must know the child is unable to exercise for itself, and, must not, by an affirmative act of omission or commission, expose such child to a danger which it knows, or has reason to believe, is unknown to and not understood or appreciated by such child. *The duty of ordinary care which the owner of premises owes to the child licensee thereon is recognized and affirmed even in those jurisdictions which refuse to recognize or apply the attractive nuisance doctrine, as evidenced by the case of Wheeling, etc., R. Co. v. Harvey, supra.*" (Our emphasis.)

This court said, in *Drew v. Lett* (1932), 95 Ind. App. 89, 95, 182 N. E. 547, 549:

> "The questions of the particular child's ability to appreciate the danger, and his power to avoid it, are usually questions of fact for the jury."

In the case of *Wozniczka v. McKean, supra,* Judge Sharp of this court discussed the reasoning in *Echevarria v. United States Steel Corp.*, 392 F. 2d 885 (7th Cir. 1968), in which case the plaintiff had a mental capacity of *five* and was playing with his brother and friend, ages eleven and fifteen, on a public playground when he started pursuing a pigeon and pursued the same onto a very dangerous part of the appellee's premises and thereby sustained injuries to his person. The court said:

> "The holding and reasoning in *Echevarria v. United States Steel Corporation, supra,* is parallel to and consistent with the statement of this court in *Brush v. Public Service Co. of Indiana,* 106 Ind. App. 554, 562, 21 N. E. 2d 83, 86 (1939), as follows:
>
> 'Generally speaking it is true that the duty of the owner or occupant of the premises to a person injured thereon depends to some extent on whether such person was there as a trespasser, or as licensee by permission or passive acquiescence only or as a licensee by the

inducement or invitation express or implied of such owner or occupant. The duty as expressed by our courts in general terms is to the effect that the owner or occupant of premises owes no duty in the trespasser thereon, except to refrain from wilfully or intentionally injuring him after discovery of his presence. *Cleveland, C.C. & St. L. R. Co.* v. *Means,* 1914, 59 Ind. App. 383, 104 N. E. 785, 108 N. E. 375.

'We recognize that there are exceptions to the general rule, such as cases to which the attractive nuisance doctrine and the doctrine of last clear chance have been applied *and cases where children and persons non sui juris are likely to come in contact with a dangerous force. Cleveland, C.C. & St. L. R. Co.* v. *Means, supra; Fort Wayne & Northern Traction Co.* v. *Stark,* 1920, 74 Ind. App. 669, 127 N. E. 460; *Terre Haute, I. & E. Traction Co.* v. *Sanders,* 1922, 80 Ind. App. 16, 136 N. E. 54; *Harris* v. *Indiana General Service Co., supra.*' (Our emphasis)"

The Supreme Court of Florida, in *Idzi* v. *Hobbs* (1966), Fla., 186 So. 2d 20, wherein a five year old child received injuries from a fire a home builder set to underbrush and materials stacked four feet high, and wherein the defendant in that case knew that children had been playing in the area and wherein the plaintiff attempted to poke the fire, slipped and fell into the fire, said:

"While the fact that a child has been warned of a danger may be enough to defeat his recovery, where it is found to be effective in making him fully aware of the situation, it is appreciation of the danger which is required to bar recovery, rather than mere knowledge of the existence of the condition itself, and where the child is too young to understand, or not sufficiently impressed to forego the attractive hazard, the warning may be found not to relieve the defendant of liability, if he could reasonably be expected to do more. * * *

"*It was for the trier of the facts whether or not this minor plaintiff sufficiently discovered the condition or realized the risk involved.* The mere knowledge that he had of the existence of the fire, and the mere fact that sometime in the past he had been instructed about the danger of fire, does not necessarily mean that he realized the risk involved in intermeddling in it or in coming within the area made dangerous

by it. *Because of his immaturity and want of judgment a child may be incapable of understanding and appreciating, or making intelligent decisions on, all of the possible dangers which he may enocunter."* (Our emphasis.)

We are of the opinion, after having reviewed the above enumerated cases and many more cited by the respective parties that because of the child's tender age of four years and the fact that he and other children of his age and even older were permitted by appellee to play in appellee's backyard that appellant Michael Keane was a licensee by permission; that he was in appelle's backyard, which was equipped as a playground for children and that appellee had every reason to know or anticipate that appellant Michael Keane or some other child would probably be in the backyard playground and come in contact with appellee's chow dog. *Cleveland, C.C. & St. L. R. Co. v. Means, supra.*

We are of the further opinion that appellee owed appellant, Michael Keane, a child *non sui juris,* the duty of ordinary care while such child licensee was on appellee's premises.

We shall next discuss the matter of the necessity of a dog's having vicious propensities to injure others, which vicious propensities must be known to the dog's owner before liability attaches to the owner for injuries inflicted by the dog.

It has often been said that the dog was entitled to his first bite, and the horse or mule to its first kick before the owner can become responsible for any damages inflicted on persons by the dog or horse.

We have heretofore set out in this opinion the amount of proof required to make appellee responsible for the acts of his dog, Toby, in attacking the appellant, Michael Keane.

It is our opinion that it is not the first bite of the dog or the first kick of the horse that controls, but the controlling factor is the "vicious" or "dangerous" propensity of the animal.

Appellee contends that the dog was not "vicious" or "dangerous" and the only evidence introduced by appellants in the trial court with respect to the "vicious" or "dangerous" propensities of the dog was that in June of 1964 the dog, Toby, bit one Rhonda Miller, age five years, while in appellee's backyard playground and that subsequently the dog bit appellant, Michael Keane. No one witnessed the first bite and the circumstances of the attack on Rhonda Miller are unknown.

Appellee further contends that the dog having bitten Rhonda Miller in June, 1964, is not evidence that the dog was "vicious" or "dangerous".

The law in Indiana is not well settled as to the legal effect of a previous bite per se. There is, however, law on this point in other jurisdictions. In Indiana we seem to have adopted a broader rule and look to the "vicious" or "dangerous" propensities of the animal.

Appellee relies on the case of *Butler* v. *Pantekok* (1962), 231 Ore. 563, 373 P. 2d 614, wherein a four year old child was bitten by a dog. The plaintiff introduced evidence at the trial that the child had previously been bitten by the dog. The court rejected plaintiff's contention that the prior bite was sufficient to establish the dog's "vicious" propensities and said:

> "The plaintiff argues that the evidence that the dog bit the plaintiff in December, 1959, is conclusive of the animal's vicious character and defendant's knowledge thereof. It may be questioned whether the jury would not have been justified in refusing to accept the testimony about this previous incident; but, that aside, although a dog is no longer entitled to one bite (Restatement, 3 Torts 22, comment g to section 509), we do not understand it to be the law that the mere proof that on another occasion a dog bit a human being is conclusive evidence that the animal has vicious propensities. That would depend on the circumstances and here the circumstances under which Jo An was bitten in December, 1959, if that actually occurred, are not disclosed."

Appellee further cites the case of *Mitchell* v. *Newsom* (Mo. App., 1962), 360 S. W. 2d 251, wherein the court stated:

"The court in *Maxwell* v. *Fraze, supra,* discussed the necessity for looking at the circumstances surrounding previous acts of the dog when it said at page 265 of 344 S. W. 2d: 'The circumstances surrounding the occasion of the biting and its extent demonstrate whether the incident of the prior bite is sufficient evidence or some evidence of a vicious propensity of the dog to inflict injury.' In any event, there is no showing of actual knowledge by defendant, and this one isolated instance would not justify holding him with constructive knowledge of it."

We must next determine what is a vicious propensity. These words are defined in *Doe* v. *Barnett* (1969), 145 Ind. App. 542, 251 N. E. 2d 688, Transfer denied March 18, 1970, at page 694:

"A vicious propensity is a propensity or tendency of an animal to do any act which might endanger the safety of person or property in a given situation. It is the act of the animal and not the state of mind of the animal from which the effects of a dangerous propensity must be determined. A dangerous propensity may, for example, be deduced from very playful conduct."

In *Doe* v. *Barnett, supra,* the court also said:

"These Indiana authorities are in accord with the general rules of liability found in Vol. 3 C.J.S. Animals, § 145, which states:
'The owner or keeper of a domestic animal is bound to take notice of the general propensities of the class to which it belongs, and also of any particular propensities peculiar to the animal itself of which he has knowledge or is put on notice; and insofar as such propensities are of a nature likely to cause injury he must exercise reasonable care to guard against them and to prevent injuries which are reasonably to be anticipated from them.' "

The evidence is most clear that Toby, a sixty-five pound chow dog, had the complete run of appellee's backyard, subject to his being tethered to a wire or clothes line running down the center of the same from end to end. The leash was of

sufficient length to permit the dog to have access to the entire area within the enclosure.

Appellee permitted youngsters of the neighborhood to use his backyard to play with the divers playthings for the enjoyment of children and permitted Toby to be among the children at all times they were playing in and making use of appellee's backyard. In June of 1964 Rhonda Miller, age five years, was attacked by Toby and severely bitten about the mouth, neck and had her nose torn loose from her face by this dog, but there were no witnesses as to why or how it happened.

After the attack on the Miller child appellee continued to permit the dog to have the same full access to the yard and playground even though he had knowledge of the dog's attack of Rhonda Miller and that his children and the neighborhood children continued to play in his backyard playground.

Appellee had knowledge of the dog having bitten Rhonda Miller and reasonable men could only infer from that knowledge that he had knowledge of the severity and viciousness of the attack, as evidenced by the severity of the injuries.

This court cannot believe that Rhonda Miller's serious mutilation and injuries were the result of a bite from a dog which may have been caused by sudden pain or fright, which sometimes causes a dog to snap involuntarily. An involuntary snap could not have inflicted all the serious wounds and injuries to Rhonda Miller that she received, as a snap would have been only one set of fang marks, while it is admitted that she had several fang marks and was mutilated.

Likewise, no one witnessed the biting of Rhonda Miller. The dog attacked her while only she and the dog were present. Appellee continued to leave the dog unattended in the yard while still permitting neighborhood children to play therein. It was while Toby was so unattended that Michael Keane entered the yard and in the absence of any witnesses as to what happened between Michael and Toby the dog, Toby, viciously attacked Michael.

The serious mutilation of Rhonda Miller is evidence that the dog would continue a vicious attack once he began the same, whether he was startled or provoked or under sudden pain, or whether he began the attack on his own initiative. Had the dog not had "vicious" propensities he would have ceased his attack after the involuntary snap appellee claims he gave Rhonda Miller, as a result of sudden pain or fright, if there was such, when he realized that there was no attack against him.

It is our opinion that the biting of Rhonda Miller in June, 1964, was evidence of a "vicious" propensity in the dog, Toby, and that the dog might attack or injure other persons without being provoked so to do, or if provoked by sudden pain or fright by a person *non sui juris*, he would continue his attack on such person after the pain or fright subsided or ceased to exist and that the one isolated instance was sufficient to hold that appellee had knowledge of such "vicious" propensities.

As was said in 4 Am. Jr. 2d, *Animals*, § 101.5 Supp., page 19:

". . . *Scienter may be established by constructive or imputed notice as well as by actual knowledge.*" (Our emphasis.)

Certainly, the appellee had constructive or imputed notice from such wounds and injuries to Rhonda Miller that the dog had vicious propensities and it was not safe to permit him to be accessible to *non sui juris* children who would come into appellee's yard to play and oftentimes unattended by others.

We must next determine if there was sufficient evidence for the case to be submitted to the jury.

Upon the filing of the motion for directed verdict it was the duty of the court to consider the evidence most favorable to the party against whom the motion was directed and to consider all reasonable inferences deducible therefrom.

The rule is well established that unless there was a total lack and failure of substantial evidence and reasonable inferences therefrom of probative value on at least one essential element of plaintiff's case, the court should not give a peremptory instruction for a directed verdict.

In reviewing the evidence most favorable to the appellants to determine whether there was substantial evidence of probative value or reasonable inferences to be drawn therefrom to sustain the appellants' cause of action it is our duty to draw against the party requesting a peremptory instruction all inferences which a jury might reasonably draw. *Burke* v. *Burke* (1963), 135 Ind. App. 235, 191 N. E. 2d 530; *Phares* v. *Carr* (1952), 122 Ind. App. 597, 106 N. E. 2d 242; *Layman* v. *Hall Omar Bkg. Co. et al.* (1966), 138 Ind. App. 673, 213 N. E. 2d 726.

Under the facts of this cause as heretofore stated and applying the test heretofore set out to determine if a verdict should have been directed for the appellee, we are of the opinion that there was substantial evidence and reasonable inferences therefrom of probative value that the dog, Toby, showed vicious propensities in severely bitting Rhonda Miller just four months before the attack on the appellant, Michael Keane, which were known to the appellee; that the appellee made no change in the manner in which he kept the dog tethered in the backyard playground and the dog had the same access to persons in the backyard which he had at the time of his first attack, which was on Rhonda Miller, that the trial court should have permitted submission of the case to the jury.

We hold it to be error to direct a verdict for the appellee here in each cause and that the decision in each cause is, therefore, contrary to law.

The judgment in the case of "Michael Keane by his next friend, Richard L. Keane versus Richard Schroeder" is re-

versed and the court is ordered to sustain the motion for a new trial therein.

The judgment in the case of "Richard L. Keane versus Richard Schroeder" is reversed and the court is ordered to sustain the motion for a new trial therein.

Carson, Lybrook and Sullivan, JJ., concur.

NOTE.—Reported in 264 N. E. 2d 95.