Loretta M. YOUNG and Parvin Young,
Plaintiffs–Appellants,

v.

Robert N. BAUGH and Bessie Baugh,
Defendants–Appellees.

No. 88–1335.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1988.

Decided Feb. 22, 1989.

As Amended March 6, 1989.

As Amended on Denial of Rehearing
April 21, 1989.

Rehearing Denied May 16, 1989.

Linda Y. Hammel, Yarling, Robinson, Hammel & Lamb, Indianapolis, Ind., for defendants-appellees.

Michael Thomasson, Marshall, Thomasson & Garber, C. Richard Marshall, Columbus, Ind., for plaintiffs-appellants.

Before CUDAHY, RIPPLE, Circuit Judges, and WILL, Senior District Judge.*

WILL, Senior District Judge.

This is an appeal from a judgment entered by the district court in favor of the defendants following a bench trial. Loretta Young, plaintiff-appellant, alleged that she was injured by the defendants' dog while on the defendants' property. The district court concluded that Mrs. Young was a licensee and therefore that the defendants' duty was to refrain from willful and wanton conduct. According to the district court, the defendants' conduct was not willful or wanton. We find that the correct standard of liability under Indiana law for the ownership and control of a dog is negligence. Accordingly, we reverse the district court's judgment and remand for a determination of whether or not the defendants were in fact negligent, whether or not the plaintiff was contributorily negligent and damages.[1]

## BACKGROUND

Loretta Young was driving through Martinsville, Indiana on November 12, 1983 when she decided to stop at the defendants' home in an effort to sell them World Book Encyclopedias. Mrs. Young is a travelling

---

* The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

1. On appeal the parties do not address Mr. Young's case, Count II of the plaintiffs' amended complaint. He alleged a loss of consortium and damages related to Mrs. Young's medical needs. His claim is dependent on the defendants' liability for Mrs. Young's injuries and accordingly judgment was entered in favor of the defendants on his claim. The plaintiffs have appealed the judgment against Mr. Young and, based on our review of Mrs.Young's appeal, the judgment entered against Mr. Young is also reversed and remanded for proceedings consistent with this opinion.

encyclopedia salesperson. She was uninvited by the defendants.

Robert and Bessie Baugh, defendants-appellees, live in a rural section of Indiana. Their residence is three to four blocks from their nearest neighbor. When Mrs. Young approached the defendants' home, Mrs. Baugh and her daughter Carolyn were there, as was their dog, an English shepherd named Lady which was eight or nine years old at that time. Mr. Baugh was not at home when Mrs. Young arrived and he did not testify at the trial.

Mrs. Young drove in the defendants' driveway and parked her car at the side of the house. From her car, she observed the defendants' dog approximately thirty feet away peering around the corner of the house. Mrs. Young testified that Lady did not bark and did not move when she looked at the dog and made eye contact.

Mrs. Young exited her car and approached the front steps of the defendants' home. As she approached the first step leading to the front door, Mrs. Young was severely bitten by Lady. The dog then retreated to the back of the defendants' home. Until she was bitten, Mrs. Young was not aware that Lady was approaching her. There were other vehicles in the driveway at the time which may have obstructed her view.

Mrs. Young cried out for help and was soon attended to by Mrs. Baugh who applied first aid to the wound inside their home. Mrs. Baugh testified that it took approximately thirty seconds for her to reach Mrs. Young after hearing Lady bark. Mrs. Baugh and her daughter had been inside the home at that time.

Mrs. Young went to a hospital later that day where she was bandaged. She used crutches for three months thereafter and continues to elevate her leg to relieve pain. She reduced her working hours and driving responsibilities, accepted a reduction in income, and was relocated to Arkansas where she now lives with her husband, Parvin Young, plaintiff-appellant.[2] Her doctor advised her that her scar was permanent and that she would live the rest of her life with pain in her leg/ankle area. She finds it necessary to take sleeping pills.

When Mrs. Baugh was cleaning the wound, she asked Mrs. Young if she had seen the "beware of dog" sign. Mrs. Young said no. Mrs. Baugh indicated that Lady had previously bitten Mrs. Baugh's mother and the family's minister (Reverend Frost). The "beware of dog" sign was placed on a utility pole in the defendants' backyard after Mrs. Baugh's mother was bitten but before Lady attacked the family's minister. The minister needed hospital attention but had no complications. The bite to Reverend Frost drew blood but the bite to Mrs. Baugh's mother apparently did not. The utility pole is sixty-one feet from the front corner of the house where Mrs. Young parked her car. No sign was placed in the front of the house.

The Baughs' daughter testified that her boyfriend was "nipped" by the dog. The defendants were not told or aware of this incident. They claimed, however, that their daughter's boyfriend's pants were torn but that he was not bitten. They also discounted the severity of the two other previous incidents.

Mrs. Young testified that following her attack she walked back to her car but could not read the "beware of dog" sign from where her car was parked. Mrs. Baugh had to point it out to her. Mrs. Young testified that the sign appeared faded and weather-beaten.

Mrs. Baugh testified that crime was a problem in their neighborhood. Sometime earlier in 1983 the defendants' backyard storage shed was broken into. Lady became more protective after this theft. The Baughs admittedly used Lady as their watchdog.

When someone was home, it was the Baughs' general practice to let Lady roam about their property without a chain. No fence was ever used. After the defen-

---

**2.** Federal jurisdiction is based on diversity of citizenship. The plaintiffs resided in Arkansas prior to filing their complaint and the defen- dants have remained Indiana citizens. It is undisputed that Indiana substantive law applies.

dants' minister was attacked, Lady was chained for two weeks. No sign was placed in the front of their home. The local sheriff subsequently advised the Baughs to fence their yard, chain the dog or put it to sleep. The defendants declined all of these suggestions.

The Baughs would warn family and friends about their dog's propensities when they visited. Expected and frequent visitors entered through the back door of the home, apparently to avoid Lady. If several people were visiting at one time, the Baughs sometimes chained Lady. When Lady barked, the Baughs usually hurried towards the back door to control Lady and see who was approaching their home. The Baughs' daughter testified that Lady did not bark before attacking the minister: Mrs. Young testified that Lady did not bark before biting her. When non-family or friends were expected to come to their home, e.g., appliance service persons, Lady would be chained.

Prior to trial, the defendants filed a motion to dismiss Counts III and IV of the plaintiffs' amended complaint under Fed.R. Civ.P. 12(b)(6). At that time, the case was before the Honorable William E. Steckler. The plaintiffs sought punitive damages in Counts III and IV. In an order dated March 20, 1987, Judge Steckler granted the defendants' motion to dismiss Counts III and IV. He concluded that "[d]og bite cases have traditionally been characterized as negligence cases.... In Indiana punitive damages cannot be awarded where the defendant's actions are merely negligence." District Court Order, March 20, 1987 at 3 (citations omitted). The plaintiffs' complaint had alleged negligence only.

At the close of the evidence in the bench trial, Judge McKinney held that Loretta Young entered the defendants' property as a licensee and the defendants, as landowners, owed a duty to Mrs. Young not to act willfully or wantonly so as to cause her injury. Proving negligence was not enough. *Gaboury v. Ireland Road Grace Brethren, Inc.*, 446 N.E.2d 1310, 1314–15 (Ind.1983). Under this standard, known as

premises liability, the plaintiffs had to prove that the defendants either (1) committed a positive wrongful act, (2) acted willfully or wantonly, or (3) created a trap. *Stewart v. Stewart*, 506 N.E.2d 1132, 1135 (Ind.Ct.App.1987) (citations omitted). Judge McKinney concluded that the defendants did "nothing willful to contribute to or proximately cause the plaintiff's injury." District Court Order, January 22, 1988 at 4.

The plaintiffs contend on appeal, as they did before the district court, that the proper standard of care under the facts of this case is negligence and that the defendants' conduct was unreasonable. They argue in the alternative that they can succeed under premises liability because the defendants' conduct was willful and wanton and the dog in this case was a "trap" since there was no adequate warning sign of its dangerous tendencies. The plaintiffs concede that the defendants did not commit a positive wrongful act, e.g., commanding Lady to attack Mrs. Young.

## STANDARD OF REVIEW

The district court's findings of fact must be upheld unless they are clearly erroneous. Fed.R.Civ.P. 52(a). Conclusions of law, however, are reviewed *de novo*. *LaSalle National Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 (7th Cir.1987). Determining what duty of care was owed by the defendants to the plaintiffs is a question of law. *Wilson v. Haimbaugh*, 482 N.E.2d 486, 487 (Ind.Ct.App.1985) (citation omitted).

## ANALYSIS

■ Under Indiana law, the owner or occupier of land owes a duty of care to one coming onto his land which varies depending on their relationship. Distinctions are made between licensees, invitees and trespassers. *Fleischer v. Hebrew Orthodox Congregation*, 504 N.E.2d 320, 321 (Ind.Ct. App.1987); *Barbre v. Indianapolis Water Co.*, 400 N.E.2d 1142, 1145 (Ind.Ct.App. 1980). It is undisputed that Mrs. Young came onto the defendants' property uninvited and for the purpose of selling them encyclopedias and was therefore a licensee

at the time she was attacked by the defendants' dog. The general rule in Indiana is that a licensee is only protected from the willful and wanton conduct of the owner or occupier of land onto which he comes. Negligence is insufficient. *Fleischer,* 504 N.E.2d at 321–22; *Gaboury,* 446 N.E.2d at 1314–15; *Stewart,* 506 N.E.2d at 1135; *Martin v. Shea,* 463 N.E.2d 1092, 1094 (Ind.1984); *Clem v. United States,* 601 F.Supp. 835, 843 (N.D.Ind.1985).

An exception to the general rule, however, appears to be dog bite cases where a negligence standard has been applied, without regard to the relationship between the victim and the owner or occupier of land on which the dog was maintained, i.e., licensee, invitee or trespasser. *Alfano v. Stutsman,* 471 N.E.2d 1143, 1144–45 (Ind.Ct.App.1984); *Royer v. Pryor,* 427 N.E.2d 1112, 1117 (Ind.Ct.App.1981); *Burgin By And Through Akers v. Tolle,* 500 N.E.2d 763, 765–66 (Ind.Ct.App.1986). *Alfano* is instructive:

> Under our common law all dogs, regardless of breed or size, are presumed to be harmless, domestic animals.... This presumption is overcome by evidence of a known dangerous propensity as evidenced by specific acts of the particular animal.... When such is the evidence, *a duty arises for the owner or keeper to use reasonable care to prevent the dog from biting someone.*
>
> When negligence is claimed, in the absence of evidence that the owner knew or should have known of a vicious tendency, the rule is simply that the owner of a domestic animal is bound to know the natural propensities of the particular class of animals to which it belongs. If these propensities are the kind which might be reasonably expected to cause injury, the owner must use reasonable care to prevent the injuries from occurring.

471 N.E.2d at 1145 (citations omitted) (emphasis added). *See also Burgin,* 500 N.E. 2d at 765–66 (quoting *Alfano*) and *Doe v. Barnett,* 145 Ind.App. 542, 251 N.E.2d 688 (1969). The *Doe* court articulated the standard of care as follows:

> The owner or keeper of a domestic animal is bound to take notice of the general propensities of the class to which it belongs, and also of any particular propensities peculiar to the animal itself of which he has knowledge or is put on notice; and insofar as such propensities are of a nature likely to cause injury he must exercise *reasonable care* to guard against them and to prevent injuries which are reasonably to be anticipated from them.

251 N.E.2d at 694 (quoting 3 C.J.S. Animals § 145) (emphasis added).

As noted above, Judge Steckler stated in his order granting the defendants' motion to dismiss the plaintiffs' punitive damages claims that "[d]og bite cases have traditionally been characterized as negligence cases." District Court Order, March 20, 1987 at 3 (citing *Dockerty v. Hutson,* 125 Ind. 102, 25 N.E. 144 (1890) and *Alfano, supra*). Indiana adopted a negligence standard while many other jurisdictions have opted for strict liability. *Doe,* 251 N.E.2d at 694 ("these rules of liability are based upon negligence and not strict liability").

> It has been held often enough that the strict liability both as to vicious dogs and as to wild animals, applies in favor of both licensees and invitees upon the premises. However, other decisions hold that there is no liability to those who come on the premises, including invitees as well as licensees, except on a negligence theory and on the same basis as the occupier is liable for ordinary dangerous conditions maintained on the property.

Prosser & Keeton, The Law Of Torts, 563 (5th ed. 1984) (footnotes omitted).

The defendants claim that the cases cited by the plaintiffs in support of a negligence standard all involved children, as opposed to adults, and that Indiana law recognizes a different standard of care only in such situations. Indiana law may recognize a higher duty of care towards child licensees, as opposed to adult licensees. *Keane v. Schroeder,* 264 N.E.2d 95, 100–102 (Ind.Ct. App.1970). However, the cases cited by

the plaintiffs discussed above do not hold that the status of a plaintiff, i.e., adult versus child, determines whether or not negligence is the appropriate standard of care. In addition, as noted above, these cases do not qualify the negligence standard based on the relationship between the plaintiff and defendant, i.e., licensee, invitee or trespasser.

*Keane* is the only case cited by defendants which is a dog bite case and which, according to the defendants, lends support for an adult versus child distinction. *Keane* was relied upon by Judge McKinney but it actually lends support to the plaintiffs' case. In *Keane*, a four year old child permitted to play in the defendant's backyard was considered a "licensee by permission" and, accordingly, the court held that the defendant had a "duty of ordinary care" to prevent injury to the child. 264 N.E.2d at 102. The court came to this conclusion after discussing several much earlier Indiana cases which had recognized a need to protect children who cannot help themselves. *See, e.g., Cleveland, C., C. & St. L. Ry. Co. v. Means*, 59 Ind.App. 383, 104 N.E. 785 (1914). The court in *Cleveland* addressed the issue as follows:

> The owner of the premises owes the adult licensee no duty of active vigilance to discover his presence or his surroundings while on his premises by permission only, ... the owner of the premises does not know and has no reason to anticipate that such adult licensee will place himself in a situation of peril. To indulge such an assumption when a child licensee of immature years, judgment, and discretion is involved would be against our common understanding and reason and lacking in every element of humanity and justice.

*Id.* at 792–93 (*quoted in Keane*, 264 N.E.2d at 101).

Notwithstanding its discussion of the special needs of children, the court in *Keane* relied on the Indiana common law discussed above establishing that owners of dogs with vicious or dangerous tendencies must act reasonably to prevent them from injuring others. 264 N.E.2d at 104

(quoting *Doe v. Barnett, supra*). Thus, while *Keane* recognized that property owners owe a higher level of care to children who come onto their property, the court also recognized that Indiana law imposes a duty of reasonable care on the owners of domestic animals who demonstrate vicious or dangerous propensities, regardless of the victim's age or status.

Indeed, *Keane* does not say or even imply that an adult dog bite victim must prove willfulness in order to recover for her injuries. Not surprisingly, the defendants admit that they found no Indiana cases in which the willful and wanton conduct standard was applied to an adult licensee bitten by a dog. Moreover, Indiana's longstanding tradition of applying a negligence standard to owners of dogs is articulated in the cases discussed above in unqualified terms.

Cases in which Indiana courts have stated that the willful and wanton conduct standard applies include the following: *Gaboury, supra* (plaintiff was injured while riding on a motorcycle when he entered church property on which a steel cable was stretched across the driveway to prevent entrance by unwanted motorists); *Stewart, supra* (plaintiff was injured by tripping over an electric chord on the floor near a stairway); *Martin, supra* (plaintiff was injured at a party when he fell into a swimming pool).

The plaintiffs suggest that these cases can be categorized in that each involved a dangerous condition of the defendant's property, as opposed to the defendant's conduct. However, in *Martin*, 463 N.E.2d at 1094–96, the court concluded that the duty of care owed by property owners to licensees is the same for dangerous conditions as it is for dangerous activities. The injury alleged in *Martin* was due to a dangerous activity conducted by a dangerous condition—an unguarded swimming pool. The court stated that "it was the swimming pool which made those activities so dangerous and so attractive to the guests. If [the defendant] was negligent, it was the potential dangerousness of the swimming pool

which made his conduct unreasonable." *Id.* at 1094.

Alternatively, if a distinction between activities conducted on property and the condition of property was recognized, it could be argued that maintaining a dog on one's property does not constitute a condition of the property which would otherwise implicate the distinctions between licensees, invitees and trespassers. On the contrary, maintaining a dog is understandably viewed as an act which must be done reasonably.

Indiana has apparently adopted an independent standard of liability for owning and maintaining domestic animals. Maintaining a domestic animal in Indiana imposes a duty of reasonable care on the owner or person in control of the animal even without knowledge of the animal's dangerous propensities.

> In the absence of knowledge on the part of an owner or keeper of animals of vicious propensities, the owner or keeper may become liable for damages the animal causes where the owner or keeper is otherwise negligent in the manner of their keeping and control.

*Burgin,* 500 N.E.2d at 766 (citations omitted).

It is clear that, under Indiana law, the owner or keeper of a domestic animal who has actual or constructive knowledge that the animal has a propensity to inflict injury to others must exercise reasonable care to prevent such injuries to others, regardless of a potential victim's age or status while on the owner or keeper's property. In addition, if the owner or keeper does not have actual or constructive knowledge of an animal's dangerous or vicious propensities, he still must exercise reasonable care in "keeping and control[ling]" the animal, regardless of a potential victim's age or status while on the owner or keeper's property. *Burgin,* 500 N.E.2d at 766.

Having concluded that the correct standard of care to be applied in this case is negligence, we believe that the determination of whether or not the defendants were negligent is a matter which should be resolved by the district court. In addition, if the defendants were negligent, the district court must also determine whether or not Mrs. Young was contributorily negligent.

Judge McKinney stated that the defendants' conduct was reasonable and that Mrs. Young could have herself avoided any injury through the exercise of reasonable care. The district court's conclusions, however, were in the context of whether or not the defendants had created a trap, one of the three theories of relief under the willful and wanton conduct standard.

> So the issue becomes in this case was the dog a trap or not, and the specific question to be asked is was the licensee given reasonable notice or warning that there was a dog on the premises to be guarded against and was this dog a danger which a person who does not know the premises could not avoid by reasonable care and skill.... [T]he conduct of the defendants, amid all the circumstances of posting a sign on the security light pole, was reasonable.... [T]his dog was not a danger that the plaintiff could not have avoided by reasonable care and skill. It is reasonable to assume that when an individual drives into a driveway on a strange premises and sees a dog, especially a dog in the country, the dog deserves more attention than a quick look.

District Court Order at 4–5.

In addition to applying the wrong liability standard, Judge McKinney's statement incorrectly suggests that contributory negligence is a defense to willful and wanton conduct. "The rule is well established that contributory negligence is no defense when injuries are wilfully inflicted." *McKeown v. Calusa,* 172 Ind.App. 1, 359 N.E.2d 550, 553 (1977) (citation omitted). Even the defendants admit that Judge McKinney's conclusion of law with respect to contributory negligence is incorrect. Brief for Defendants–Appellees at 29. Moreover, as noted above, whether or not Mrs. Young was negligent herself will be determined upon remand. Indiana law currently recognizes the doctrine of comparative negligence, Ind.Code § 34–4–33–1 *et seq.* (1985), but it applies only to actions

which arise on or after January 1, 1985. *Walters v. Dean*, 497 N.E.2d 247, 250 (Ind. Ct.App.1986). Because Mrs. Young's injuries occurred on November 12, 1983, the doctrine of contributory negligence is a defense to her claim, under which Mrs. Young's comparative fault, if any, will be weighed against that of the defendants and possibly reduce their liability.

## CONCLUSION

The district court entered judgment against the plaintiff based on the application of an incorrect standard of liability. The correct standard of liability under Indiana law for the ownership and control of a dog is negligence regardless of the age or status of the victim. The plaintiff was injured before the effective date of Indiana's comparative negligence statute. Accordingly, we reverse the district court's judgment and remand for a determination of whether or not the defendants were negligent, whether or not the plaintiff was contributorily negligent and damages.

Circuit Rule 36 shall apply on remand.

REVERSED AND REMANDED WITH INSTRUCTIONS.