**Nicholas PLESHA and Randie Plesha, Appellants–Defendants,**

v.

**Robert G. EDMONDS, Jr., by Next Friend Robert G. EDMONDS, Sr., and Debbie Edmonds; and Robert G. Edmonds, Sr. and Debbie Edmonds, Individually, Appellees–Plaintiffs.**

No. 45A04–9904–CV–168.

Court of Appeals of Indiana.

Oct. 20, 1999.

---

983

Steven P. Polick, Tammy S. Sestak, Steven P. Polick & Associates, P.C., Highland, Indiana, Attorneys for Appellants.

Kevin C. Smith, Benjamen W. Murphy, Thomas A. Clements, Ruman Clements Tobin & Holub, P.C., Hammond, Indiana, Attorneys for Appellees.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Nicholas and Randie Plesha appeal from a judgment in favor of Robert and Debbie Edmonds, individually and as the parents of Robert G. Edmonds, Jr. ("Rob"), a minor. The Edmonds filed their complaint for damages against the Pleshas after Rob was bitten by the Pleshas' dog, Sampson. The Edmonds alleged, and the trial court found, that the Pleshas violated a Hammond city ordinance ("Ordinance") which requires that dogs be kept under restraint.

We affirm.

### ISSUES

We restate and address the following issues:

1. Whether the trial court erred when it denied the Pleshas' motion for judgment on the evidence.

2. Whether the evidence was sufficient to support the trial court's determination that the Pleshas violated the Ordinance, proximately causing Rob's injuries.

1. The Orchard Drive Baptist Church was originally named a defendant in this action but was later voluntarily dismissed by the parties. From this we infer that the Pleshas had the exclusive right to control the property. *See Baker v. Weather ex rel. Weather,* 714

### FACTS AND PROCEDURAL HISTORY

On July 16, 1995, fourteen-year-old Rob and a friend were walking across an open field owned by the Orchard Drive Baptist Church[1] and leased to the Pleshas, who lived adjacent to the church and open field. The boys were taking their usual route to watch a softball game at a nearby ball park. There were no markers identifying the boundary between the Plesha property and the church property, and the neighborhood children regularly traversed the open field to reach the park.

The Pleshas were hosting a barbeque in their backyard and had taken their dog, Sampson, off his chain so he could play. As Rob and his friend walked by, Sampson began barking and ran towards them. The Pleshas yelled after Sampson to "stop" and told the boys, "Whatever you do, don't move. He won't hurt you if you don't move." Record at 231. Rob's friend ran, but Rob remained still as he had been instructed. Sampson then bit Rob several times as Rob tried to protect himself by pushing the dog away. Randie Plesha grabbed Sampson and pulled him away from Rob. As she was walking Sampson back to the house, the dog broke free and bit Rob one more time.

The Edmonds filed their complaint against the Pleshas on July 16, 1997, alleging that the Pleshas were negligent in failing to keep Sampson restrained. At the bench trial, the trial court took judicial notice of Hammond Ordinance Section 9151–A, which reads:

> [A]ll dogs and cats shall be kept under restraint. It is an animal owner's responsibility to insure that animals on and off their real property be restrained. When off the real property, animals shall be on a leash not to exceed six feet

N.E.2d 740, 741 (Ind.Ct.App.1999) (to prevail on claim against owners of property where dog bites occurred, plaintiffs were required to show that owners retained control over property rented to son and daughter-in-law).

in length; or if without [a] leash, [the] animal must be under complete control of the owner and not more than three feet from the owner. Animals on real property must be within a fenced area sufficient in height to prevent the animal to escape; or if on a leash, the animal must be secured on a leash that is at least six feet in length and located where the animal cannot trespass beyond its owner's property line.

Record at 157. Thereafter, the trial court ruled that the Pleshas' violation of the Ordinance was the proximate cause of Rob's injuries, and entered judgment in favor of the Edmonds for $2,500.00 plus costs. The Pleshas now appeal.

## DISCUSSION AND DECISION

### Issue One: Motion for Judgment on the Evidence

The Pleshas first contend that the trial court erred in failing to grant their motion for judgment on the evidence. Following the Edmonds' presentation of their case-in-chief, the Pleshas moved for judgment on the evidence on the grounds that Rob was a trespasser on their property. However, the trial court did not rule, in effect, denying the motion. The Pleshas then commenced with the presentation of their defense. After all the evidence had been presented, the Pleshas renewed their motion for judgment on the evidence, which the trial court denied.

■ Initially, we note that a motion for judgment on the evidence under Indiana Trial Rule 50 is improper at a bench trial. *Benefit Trust Life Ins. Co. v. Waggoner*, 473 N.E.2d 646, 647 (Ind.Ct. App.1985). A Trial Rule 50 motion ad-

dresses the issue of whether there is sufficient evidence to justify submitting the case to a jury. *Id.* Because the instant case was tried before the court without a jury, it should be treated as a motion for involuntary dismissal under Trial Rule 41. *Villanella v. Godbey*, 632 N.E.2d 786, 790 (Ind.Ct.App.1994). In ruling on a motion for involuntary dismissal, the trial court may weigh evidence, judge witness credibility, and decide whether the party with the burden of proof has established a right to relief or defense. *Id.* (citing T.R. 41(B)). Any error made in not granting a motion for involuntary dismissal, however, is waived by the movant's subsequent presentation of evidence. *Waggoner*, 473 N.E.2d at 648. Therefore, the Pleshas waived any claim of error when the trial court effectively denied their motion for involuntary dismissal and they proceeded with their case.[2] Having deemed the issue waived, we find no error.

### Issue Two: Sufficiency of the Evidence

■ The Pleshas next contend that the evidence was insufficient to support the trial court's judgment that they violated the Ordinance, proximately causing Rob's injuries. *See Town of Montezuma v. Downs*, 685 N.E.2d 108, 112 (Ind.Ct. App.1997) (trial court must determine whether ordinance violation is proximate cause of injury), *trans. denied.* When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Hardsaw v. Courtney*, 665 N.E.2d 603, 606 (Ind.Ct. App.1996). Rather, we consider only the evidence and all reasonable inferences therefrom which support the judgment.

2. We also note that the Pleshas' renewed motion for judgment on the evidence after all the evidence had been presented amounted to no more than a request for judgment in their favor. "Pursuant to T.R. 41(B) ... the trial court as the trier of fact can weigh the evidence, determine the credibility of witnesses and decide which party has sustained his burden of proof in ruling on a motion for involuntary dismissal. When the trial court rules on a motion for dismissal after all the evidence has been presented, it is simply entering judgment at the conclusion of the trial to the court." *Waggoner*, 473 N.E.2d at 648. Thus, instead of deeming the issue waived, we view the procedural posture of the Pleshas' claim simply as a challenge to the sufficiency of the evidence supporting the trial court's judgment.

*Id.* When, as here, a trial court enters a general judgment with no findings of fact, we presume the judgment is based on findings supported by the evidence. *Klebes v. Forest Lake Corp.,* 607 N.E.2d 978, 982 (Ind.Ct.App.1993), *trans. denied.* Our standard of review in such cases is limited, and we must affirm the trial court's judgment if it can be sustained on any legal theory supported by the evidence. *Id.*

■ The evidence here establishes that the Pleshas failed to restrain Sampson with a fence or place him on a leash. Upon observing Rob and his friend, Sampson barked and ran from the Pleshas' yard to the open field where the boys were walking, charging the boys and biting Rob several times. Even after Randie Plesha attempted to pull Sampson away from Rob, the dog ran back and bit Rob once again.

■ The Ordinance under which the trial court found the Pleshas liable mandates that "[A]ll dogs and cats ·*shall be kept under restraint.* It is an animal owner's responsibility to insure that animals *on and off their real property* be restrained." (Emphases added). The unexcused or unjustified violation of a duty proscribed by a statute or ordinance constitutes negligence per se if the statute or ordinance is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation. *French v. Bristol Myers Co.,* 574 N.E.2d 940, 943 (Ind.Ct.App.1991), *trans. denied.* Clearly, the class of persons to be protected and the risk of harm to be prevented include Rob and his injuries. It is not within our prerogative, as the Pleshas suggest, to reweigh the evidence or assess the credibility of the witnesses. The evidence was sufficient to support a determination that the Pleshas failed to restrain their dog in violation of the Ordinance, and that this violation proximately caused Rob's injuries.

Nevertheless, the Pleshas argue that when correctly interpreted the Ordinance requires only that owners prevent their dogs and cats from escaping beyond their property line. Because Sampson never left their property, the Pleshas maintain they could not have violated the Ordinance. The Edmonds respond that the Ordinance requires that all dogs and cats be restrained on their owners' property by means of a mandatory fence or leash. Clearly, the Pleshas had neither.

■ We note that the rules relating to statutory construction are equally applicable to construing ordinances. *Hobble By and Through Hobble v. Basham,* 575 N.E.2d 693, 697 (Ind.Ct.App.1991). Every word in a statute must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute. *Spaulding v. International Bakers Servs., Inc.,* 550 N.E.2d 307, 309 (Ind.1990). A statute should be examined as a whole and a strict, literal, or selective reading of individual words should not be overemphasized. *Id.*

■ Were we to give effect to the Pleshas' narrow construction of the Ordinance here, we would abrogate the Ordinance's clear mandate that "[a]nimals on real property *must* be within a fenced area . . . or . . . on a leash," (emphasis added), as well as the common law doctrine that dog owners owe a duty of reasonable care to prevent injury. *See Alfano v. Stutsman,* 471 N.E.2d 1143, 1144–45 (Ind.Ct.App. 1984). The Ordinance does not limit a dog owner's duty of reasonable care, but defines it by setting forth the manner in which a dog owner is to exercise that duty. The duty to prevent injury which can reasonably be anticipated extends beyond simply insuring that a dog stays within its owner's property line, as the Pleshas would have it.

■ Moreover, this court endeavors to give statutory words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise. *Rush v. Elkhart*

*County Plan Comm'n,* 698 N.E.2d 1211, 1215 (Ind.Ct.App.1998), *trans. denied.* The Ordinance does not state that owners shall "contain" their dogs and cats within their property, but provides that owners shall "restrain" their dogs and cats. The Pleshas' interpretation ignores the plain and ordinary meaning of the terms "restraint" and "restrained," which import active control and prevention of conduct rather than mere containment. *See* BLACK'S LAW DICTIONARY at 1214 (6th ed. 1991) (confinement or holding back from action); AMERICAN HERITAGE DICTIONARY at 1438 (3d ed. 1992) (to hold back or keep in check; control). Accordingly, we decline to adopt the Pleshas' interpretation of the Ordinance and affirm the trial court's determination that they violated the same, proximately causing Rob's injuries.

The Pleshas maintain in the alternative that even if there was a technical violation of the Ordinance, "Sampson was lawfully on the premises of the Pleshas in a position and place which he had a right to be at the time of the occurrence." Brief of Appellant at 11–12. Specifically, the Pleshas contend that because Rob was trespassing on their property at the time of the attack and they did not willfully or wantonly cause Rob's injuries, they are not liable as a matter of law. We cannot agree.

As a general rule in Indiana, the only duty an owner or occupier of land owes to a trespasser is to refrain from willfully or wantonly injuring a trespasser after discovering his presence; negligence is insufficient. *Carroll by Carroll v. Jagoe Homes, Inc.,* 677 N.E.2d 612, 615 (Ind.Ct. App.1997), *trans. denied.* An exception to the general rule, however, appears in dog bite cases, where this court has consistently applied a negligence standard without regard to whether the victim was an invitee, licensee, or trespasser on the land on which the dog was maintained. *See Burgin By and Through Akers v. Tolle,* 500 N.E.2d 763, 765–66 (Ind.Ct.App.1986); *Alfano,* 471 N.E.2d at 1144–45; *Royer v.*

*Pryor,* 427 N.E.2d 1112, 1117 (Ind.Ct.App. 1981); *Doe v. Barnett,* 145 Ind.App. 542, 550–51, 251 N.E.2d 688, 694 (1969). As we observed in *Alfano:*

> Under our common law all dogs, regardless of breed or size, are presumed to be harmless, domestic animals. This presumption is overcome by evidence of a known or dangerous propensity as evidenced by specific acts of the particular animal. *When such is the evidence a duty arises for the owner or keeper to use reasonable care to prevent the dog from biting someone.*
>
> When negligence is claimed, in the absence of evidence that the owner knew or should have known of a vicious tendency, the rule is simply that the owner of a domestic animal is bound to know the natural propensities of the particular class of animals to which it belongs. *If these propensities are the kind which might be reasonably expected to cause injury, the owner must use reasonable care to prevent the injuries from occurring.*

*Alfano,* 471 N.E.2d at 1145 (citations omitted) (emphasis added).

Additionally, in *Keane v. Schroeder,* 148 Ind.App. 131, 264 N.E.2d 95 (1970), we recognized that property owners may owe a higher level of care to children who come, even trespass, onto their property:

> The probable presence of children on property where a dangerous activity is being carried on, imposes a duty of ordinary care on the owner of such property to anticipate their presence by keeping a lookout for them, and such duty applies not only with respect to children under seven years of age, but may apply to older children whose presence the owner has reason to expect ... *If the probable presence of children on the premises raises a duty to them of ordinary care, such duty may be violated before the children arrive on the premises, by leaving things undone which should have*

*been done in anticipation of their coming,* but the duty of care arising from the probable presence of children on the premises, is relative rather than absolute. *Id.* at 141–42, 264 N.E.2d at 100 (emphasis added). Nevertheless, in *Keane,* we reaffirmed the rule that the owner of a dog with vicious or dangerous propensities must exercise reasonable care to guard against such propensities and to prevent injuries which can be reasonably anticipated from them. *Id.* at 147, 264 N.E.2d at 104.

In summary, maintaining a dog in Indiana imposes on a dog owner the duty of reasonable care, even when the owner is unaware of the dog's vicious or dangerous propensities. *See Alfano,* 471 N.E.2d at 1145. Without knowledge of the dog's vicious or dangerous propensities, the owner may become liable for damages the dog causes where the owner is otherwise negligent in the manner of his "keeping and control" of the dog. *See Burgin,* 500 N.E.2d at 766. Above all, an owner is bound to know a dog's natural propensities and use reasonable care to prevent injuries which might reasonably be expected from those propensities. *See Alfano,* 471 N.E.2d at 1145. The foregoing duties are imposed on the owner of a dog regardless of a dog bite victim's age or status.

The record here is uncontroverted that Sampson was neither fenced in nor on a leash at the time he charged and bit Rob. The attack occurred in a location where many neighborhood children were known to walk on a regular basis to reach the nearby ball park. Randie Plesha testified that Sampson had a tendency to try and break free from his lease when aggravated, growled at trespassers, and was usually kept on a chain because he is "a hunting dog," and if he smelled something, "he is liable to track it down." Record at 241. This evidence was sufficient to support a conclusion that the Pleshas failed to exercise reasonable care in keeping their dog restrained or in preventing their dog from biting someone, irrespective of Rob's status as a trespasser. Any given method of restraining a dog may or may not be adequate under the particular facts of a particular case; however, what precautions should have been observed and what foresight should have been exercised are questions more appropriately reserved for the trier of fact. *Hardsaw,* 665 N.E.2d at 607. We find no error.

Affirmed.

STATON, J., and RUCKER, J., concur.