Thomas E. ROSS, Appellant–Plaintiff,

v.

Val D. LOWE, Appellee–Defendant.

No. 35A02–9202–CV–72.

Court of Appeals of Indiana,
Second District.

Dec. 31, 1992.

Rehearing Denied Feb. 3, 1993.

was not normally on Ross's route. Checking his hand-held computer, Ross noted that Lowe's house was coded as having a "bad dog" in the area where the meter was located. This code meant that a dog was present and that caution should be exercised. As Ross walked in Lowe's driveway toward the fenced-in backyard, he saw a sign reading "BEWARE OF THE DOG" and heard a dog on the other side of the fence barking, growling, and jumping at the gate. He decided at this point to seek out the owner of the property.

As he was walking to the front door, Ross met Emily, Lowe's 12–year–old daughter, in the driveway. When Ross asked to talk with the owner, Emily stated that her father was not at home. Ross identified himself as a NIPSCO employee and asked Emily to confine the dog, a purebred boxer, inside the house. Additionally, Ross asked Emily to make sure that both the storm door and the inside door were shut after the dog was inside. After a short wait, Emily indicated that the dog was inside and that Ross could safely enter the backyard fence. Before entering, Ross once again asked whether both doors were closed, to which Emily responded in the affirmative.

Once inside the fence, Ross walked toward the meter while at the same time glancing at the back door. In fact, the inside door was not closed, but a glare on the outside door prevented Ross from discovering this until he had progressed several paces across the back yard. As soon as he saw that the inside door was open, Ross quickly retreated toward the gate. However, before he could exit the backyard, he heard a "crash" and he turned to see the dog breaking through the storm door. The dog knocked Ross to the ground, dislocating his shoulder. Before Emily could pull the dog off, Ross had suffered scratches and cuts to his face and hip, had lost his eyeglasses, and had sprayed mace into his own face while attempting to spray the dog's face, which was very near his own at the time.

Ross sued Lowe for damages incurred as a result of his injuries. At the conclusion

Jack E. Morris, Samuel W. Jarjour, Benson, Pantello, Morris & James, Fort Wayne, for appellant-plaintiff.

Thomas L. Wooding, J. Frank Kimbrough, Wilks and Kimbrough, Fort Wayne, for appellee-defendant.

SULLIVAN, Judge.

Thomas Ross appeals from the grant of a directed verdict in favor of Val Lowe. Upon appeal, Ross argues that the trial court's ruling was erroneous because Ross had successfully presented a prima facie case with respect to each element of his complaint for personal injury as a result of an attack by Lowe's dog.

We affirm.

The facts most favorable to Ross are as follows. Ross was employed as a meter reader by Northern Indiana Public Service Company (NIPSCO). Early in the afternoon of July 29, 1988, Ross went to the home of Val Lowe in Fort Wayne, to read Lowe's meter, although Lowe's residence

of Ross's case-in-chief, the trial court granted Lowe's motion for a directed verdict upon grounds that Val Lowe was not negligent in entrusting the dog to Emily's care, and, in any event, any negligence upon Emily's part could not be imputed to her father.[1]

Our standard for reviewing a grant of a motion for directed verdict, or judgment on the evidence, is well settled:

"[We use] the same standard utilized by the trial court in making its decision. We look only to the evidence and reasonable inferences therefrom most favorable to the non-moving party. The motion should be granted only where there is a complete failure of proof, that is where there is no substantial evidence or reasonable inference from the evidence supporting an essential element of the claim. Neither this court nor the trial court may weigh conflicting evidence when examining a motion for judgment on the evidence." [Citations omitted] *First Bank & Trust Company of Clay County v. Bunch* (1984) 1st Dist.Ind.App., 460 N.E.2d 517, 518–19.

In order for his action to survive a motion for directed verdict, it was incumbent upon Ross to show, *inter alia,* prima facie evidence that Val Lowe was guilty of negligence in the dog attack. Lowe's negligence could have taken one of two forms: either actual, i.e., he was negligent in leaving Emily in charge of the dog; or imputed, i.e., he was vicariously liable for Emily's negligence, if any. The trial court's comments, *supra,* upon grant of directed verdict, clearly demonstrate its conclusion that Lowe was not negligent under either theory.

## I. *Dog Owner's Duty*

Under Indiana common law, all dogs are presumed to be harmless domestic animals, regardless of their size or breed. *Burgin ex rel. Akers v. Tolle* (1986) 4th Dist.Ind.App., 500 N.E.2d 763, 765. This presumption may be overcome by evidence that it had a known or dangerous propensity, as shown by specific acts of the particular dog. *Id.* When evidence of dangerous propensity is shown, it gives rise to a duty on the part of the owner or keeper of the animal to use reasonable care to prevent the dog from biting or otherwise injuring someone. *Id.*

On the other hand, when negligence is claimed, i.e., in the absence of evidence that the owner knew of the dog's dangerous propensities, the rule is that the owner is bound to know the natural tendencies of the particular class of animals to which his dog belongs. *Burgin, supra,* 500 N.E.2d at 766. If the propensities of the class to which the dog belongs are the kind which one might reasonably expect would cause injury, the owner must use reasonable care to prevent injuries from occurring. *Id.*

---

1. Upon grant of directed verdict, the trial court stated as follows:

   "[T]here is no evidence in the record that shows that the defendant, Val Lowe, knew or should have known that any of his children would not confine or control the dog or could not confine or control the dog or in some way were unable to do so.

   Next there is no evidence in the record that the defendant, Val Lowe, somehow negligently supervised his children or somehow failed to reasonably supervise his children. And ... there is not evidence in the record from which a jury can draw a reasonable inference that the defendant, Val Lowe, either instructed his children improperly as to the dog and its confinement or failed to instruct them reasonably." Record at 337.

   *      *      *      *      *

   "There is no evidence in the record, in my opinion, from which a jury can draw a reasonable inference that Emily had been made an agent of the defendant, Val Lowe, either active—actual agency or constructive agency for any purpose. And I'm not aware of any statute or other legal provision by which Val Lowe could be held vicariously liable simply because he is the father of Emily if Emily were negligent in or with respect to the dog and its attack on Mr. Ross.... I see no evidence in the record of failure to use reasonable care under the circumstances by the defendant, Val Lowe." Record at 339 and 342.

Thus, whether the dog's vicious propensities are known or whether they are not known, the owner's duty is the same in either case: he must use reasonable care to prevent injury. The importance of determining whether the dog had vicious propensities of which the owner reasonably should have known therefore lies not in determining whether a duty existed, but rather in assessing whether the owner's conduct sufficiently discharged his duty. Accordingly, the duty of reasonable care requires more of an owner of a dog which has vicious propensities than it does of one who owns a dog with no such known propensity.

Ross argues in his appellate brief that Lowe's dog had known vicious propensities, thus triggering the higher duty. Without deciding that he is correct in this regard, we conclude that the precautions which Lowe undertook to safeguard others from injury by his dog were sufficient as a matter of law even under the more rigorous "vicious propensity" standard of measuring his conduct.

## II. *Actual Negligence*

The first theory upon which Lowe may be found to have been guilty of actual negligence stems from the way in which he penned his dog. The dog was kept in a backyard which was enclosed by a six-foot fence, with a latched gate. In addition, upon the fence was a clearly visible sign warning others to "BEWARE OF THE DOG". The dog was thus sufficiently penned so as to protect the public from injury, even if it was known to have vicious propensities. Moreover, Ross was injured while inside the fenced yard, where he was aware of the dog's close proximity, and where he had been warned to beware of the dog. The trial court correctly concluded that Lowe was not negligent in the way he penned his dog. *See, e.g., Alfano v. Stutsman* (1984) 3d Dist.Ind.App., 471 N.E.2d 1143 (no liability as a matter of law when dog with vicious propensity chained in yard, and owner posted "Beware of the Dog" sign).

Ross also argues that Lowe was guilty of actual negligence in leaving Emily in charge of the dog in his absence. The question of negligence in this regard is fact sensitive, and requires an evaluation of Emily's capacity in light of the dog's nature. Lowe's dog is a purebred boxer, a fairly large dog, which was purchased as both a companion for his children, and as a "deterrent", presumably to deter would-be wrongdoers with regard to Lowe's property and children. Although the dog lunged and barked at the gate when people walked nearby, the dog was not trained to attack, and there is no evidence that the dog had ever attacked anyone before. Emily was twelve years old at the time of this occurrence, and there was nothing to suggest that she was less than average in size and mental capacity for a child of her age. Ross presented no evidence which gives rise to a reasonable inference that Emily could not adequately control the dog. In fact, it was Emily who ultimately succeeded in pulling the dog away from Ross long enough for him to escape. There is no reason to conclude that Emily was incapable of controlling the dog. More to the point, there is no evidence from which to draw an inference that Lowe was negligent in leaving the dog under Emily's supervision.

In summary, Lowe's actual negligence was not a proximate cause of Ross's damages. However, our inquiry does not end there. Although the precautions which Lowe undertook in confining his dog and warning others of its presence constituted reasonable care, there remains the questions of whether Emily was negligent and whether her negligence, if any, may be imputed to her father.

## III. *Imputed Negligence*

The facts most favorable to Ross show that he explicitly told Emily to close *both* doors after putting the dog inside. Moreover, once she informed him that the dog was inside and that he could enter the backyard, he again asked her whether *both* doors were shut, to which she responded in the affirmative. The question of whether a particular course of conduct amounts to negligence is generally a question of fact for the fact finder. Knowing that the dog was agitated by Ross's presence (as evi-

denced by its barking and lunging at the gate), and in light of the fact that Ross twice specifically asked her to shut the inside door, we conclude that there was a question of fact as to whether Emily's failure to shut the inside door constituted negligence. However, Ross filed the instant action against Lowe, not Emily. Thus, in order to prevail based upon Emily's negligence, if any, her negligence must be imputed to Lowe.

■ Ross argues that the following passage supports the proposition that the negligence of a dog's keeper is imputed to the dog's owner:

"A man who keeps a dog is bound either to have it under his own observance and inspection, or if not, to appoint some one under whose observation and inspection it may be, and that person's knowledge is the knowledge of the owner. When it appears that a domestic animal is vicious, and has a propensity to do mischief, of which facts the owner or keeper has notice, either express or implied, the law imposes the duty upon such owner or keeper of keeping such animal secure, from which duty a liability arises in favor of any person who without his fault is injured by it, either in person or property." *Holt v. Myers* (1911) 47 Ind.App. 118, 93 N.E. 1002, 1002–03.

In *Holt,* the issue was whether the keeper's knowledge that the dog had vicious propensities could be imputed to the owner, or whether the owner must have actual knowledge that his dog was vicious. *Holt* did not involve an act or omission which was sought to be imputed. Read in that context, the aforementioned language, and *Holt* in general, is inapplicable to the instant case. Ross offers no other support for the proposition that Emily's negligence may be imputed to her father merely upon the basis of her status as keeper of the dog, and we find none.

■ Next we consider whether Emily's negligence may be imputed to Lowe on the basis of the parent-child relationship. In support of his argument upon this point,

Ross offers the following from *Sheridan v. Siuda* (1971) 150 Ind.App. 395, 276 N.E.2d 883:

"To impute the negligence of one person to another, the relation between them must be one invoking the principles of agency, or the parties must be co-operating in a common or joint enterprise, or the relation between the parties must have been such that the persons to whom the negligence is imputed must have had a legal right to control the action of the person actually negligent." 276 N.E.2d at 890 (quoting *Union Traction Company of Indiana v. Gaunt* (1922) 193 Ind. 109, 135 N.E. 486, 488).

Once again, this case and its holding are inapplicable to the case at bar. In *Sheridan,* the plaintiff's six-year-old daughter was killed after being struck by a truck. That child had been left in the care of the plaintiff's eighteen-year-old son. The issue to which the aforementioned passage applies is whether the negligence of the eighteen-year-old in caring for his sister may be imputed to his father, thus defeating the father's claim against the truck driver. The distinction between that case and the instant case lies in the degree of control exerted by the parent. The *Sheridan* court noted that the aforementioned passage merely states the proposition that in order to impute a child's negligence to his parent, the parent must have the right to control or regulate the child whose negligence is to be imputed. The analysis, then, proceeds on normal agency principles.

We acknowledge that a child's negligence may be imputed to his parents in certain circumstances. However, we have long begun the analysis of cases such as the instant case upon the general rule that a parent is not responsible for the torts of his or her minor child. *Moore v. Waitt* (1973) 157 Ind.App. 1, 298 N.E.2d 456; *Teagarden v. McLaughlin* (1882) 86 Ind. 476, 44 Am.Rep. 332. Exceptions to this general rule do exist. One exception is created by statute in Indiana, and is inapplicable here.[2] Four others are generally recog-

---

**2.** I.C. 34–4–31–1 (Burns Code Ed.Supp.1992) imposes limited liability upon parents for damages resulting from their child's knowing, reckless, or intentional behavior. Ross does not contend

nized at common law, three of which have been recognized in Indiana. The four common-law exceptions are:

"(1) where the parent entrusts the child with an instrumentality which, because of the child's lack of age, judgment, or experience, may become a source of danger to others; (2) where the child committing the tort is acting as the servant or agent of its parents; (3) where the parent consents, directs, or sanctions the wrongdoing; and (4) where the parent fails to exercise control over the minor child although the parent knows or with due care should know that injury to another is possible." *K.C. v. A.P.* (1991) Fla.Dist.Ct.App., 577 So.2d 669, 671, *review denied* (quoting *Snow v. Nelson* (1985) Fla., 475 So.2d 225, 226).

The first common-law exception applies when a parent entrusts to a child an instrumentality which may cause harm to others precisely because that particular child is responsible for the instrumentality. This exception requires that there be a potentially dangerous instrumentality. We cannot say that Lowe's dog was such an "instrumentality". Although the dog was obtained at least in part as a deterrent, it was not trained as such and there is no evidence that he ever attacked anyone before the attack upon Ross. Therefore, the dog was not, nor did Lowe have reason to believe that it was, so inherently dangerous that he was arguably negligent to leave it under Emily's supervision.

The second and third common-law exceptions are practically indistinguishable for purposes of the instant case, and proceed upon normal agency principles. If, for all relevant purposes, the child is the parent's agent at the time of and with respect to the negligent act, then the parent is vicariously liable. However, these exceptions are applicable only in those instances in which the child is under the parent's direction, or doing work commanded or authorized by him. *Teagarden, supra,* 86 Ind. at 478. Although there is arguably a sense in which everything that a child does is theoretically subject to parental control, liabili-

ty under these exceptions only attaches when the nexus between the child's activity and the parent's control is direct. To hold otherwise would be to completely emasculate the general rule. In the instant case, Lowe was not present to supervise Emily, nor did he direct that Emily not shut the inside door. It was not enough that Lowe instructed Emily to care for the dog. Therefore he is not liable under either of these exceptions.

A parent is liable under the fourth and final exception when the parent knows, or should know, "that the child had a habit of engaging in [the] *particular* act or course of conduct which led to the plaintiff's injury." [Emphasis in original] *K.C. v. A.P., supra,* 577 So.2d at 671 (quoting *Snow, supra,* 475 So.2d at 226). There is no evidence that Emily had previously failed to secure the dog when people entered the backyard, nor is there any evidence that she had ever experienced difficulty controlling the dog in any setting.

In summary, the instant facts do not bring this case within any of the recognized exceptions to the general rule that a parent is not liable for the torts of his or her child. Thus, in view of the facts that Lowe was not guilty of direct negligence and Emily's negligence, if any, could not be imputed to him, the trial court correctly concluded that Ross had not presented prima facie evidence of a claim against Lowe upon which relief could be granted.

The judgment of the trial court is affirmed.

BUCHANAN and BAKER, JJ., concur.

---

that Emily's failure to shut the inside door was

knowing, reckless, or intentional.