Thomas E. ROSS, Appellant,

v.

Val D. LOWE, Appellee.

### No. 35S02–9308–CV–948.

Supreme Court of Indiana.

Aug. 30, 1993.

Jack E. Morris, Ronald E. James, Benson Pantello Morris & James, Fort Wayne, for appellant.

Thomas L. Wooding, J. Frank Kimbrough, Wilks & Kimbrough, Fort Wayne, for appellee.

### ON PETITION TO TRANSFER

KRAHULIK, Justice.

Does a landowner fulfill his duty to invitees by fencing his yard and leaving the family dog in the care of his 12–year–old daughter? Not necessarily.

Thomas E. Ross (Plaintiff–Appellant below) seeks transfer after the Court of Appeals affirmed the trial court's entry of judgment on the evidence against him and in favor of Val D. Lowe (Defendant–Appellee below) in this negligence action. *Ross v. Lowe* (1992), Ind.App., 605 N.E.2d 786. We grant transfer and remand the case for a new trial.

The facts most favorable to Ross show the following. Lowe owned a house and a dog in Fort Wayne, Indiana. The dog was a three-year-old, seventy-pound boxer named Travis. Lowe obtained Travis as a deterrent to trespassers and as company for his children. Travis was kept either inside the house or in the back yard of Lowe's home in an area surrounded by a six-foot-high wooden fence. The postal carrier who delivered mail to the Lowe residence testified that, on several occasions, when he approached the Lowe house, Travis became very agitated and began jumping up and down and straining against the window screen of the house or against the fence. The postal carrier was worried that the dog might get loose.

When Lowe first moved into the house, there was no gate in the fence, and so he asked the utility companies to instruct their employees to knock on the front door to gain access to the fenced area where the meter was located. Once he installed the gate, however, he did not believe it necessary for meter readers to gain access through the front door.

Lowe's twelve-year-old daughter, Emily, was responsible for watching Travis and making sure that the dog was properly restrained. Lowe acknowledged, however, that he was concerned that his children might not be able to restrain Travis if the dog tried to break loose.

Ross was employed as a meter reader for Northern Indiana Public Service Company. On July 29, 1988, Ross arrived at Lowe's home to read the meter. Ross had with him a hand-held computer which, among other things, was programmed to give advance warning of problems at any given house on the route. Lowe's house was coded as having a "bad dog." This meant that caution should be exercised in approaching the house.

As Ross walked toward the fenced area, he observed a "Beware of Dog" sign and heard Travis growling, barking and lunging at the gate. Hearing the dog, Ross turned around and walked back toward the front when he encountered Emily. Ross identified his purpose for being on the premises and asked Emily to confine the dog in the house so he could enter the fenced area to read the meter. Ross asked her to secure both the inner door and the outer storm door of the house. Emily went into the house, returned less than a minute later, and more than once assured Ross that both doors were secured.

Emily opened the gate for Ross, and they proceeded across the backyard toward the meter. On the way, Ross observed that only the storm door had been closed. Immediately, he turned to exit the backyard. Before he could complete his exit, Travis crashed through the storm door, bounded out of the house, jumped on Ross and knocked him down. Ross, while still on the ground and holding Travis by the neck, attempted to spray mace on Travis, without much immediate effect. Travis snapped at Emily as she attempted to physically control him. Eventually, when Travis ran off, Ross left the backyard. As a result of the fracas, Ross sustained a dislocated shoulder and other injuries.

Ross sued Lowe, but not Emily, for negligence. After presentation of all the evi-

dence to a jury, the trial court granted Lowe's motion for judgment on the evidence pursuant to Indiana Trial Rule 50. The Court of Appeals affirmed. 605 N.E.2d 786. On transfer, Ross argues that he has presented sufficient evidence for the jury to find in his favor. We agree.

In reviewing the grant of judgment on the evidence, the court considers only the evidence and reasonable inferences most favorable to the nonmoving party. *Jones v. Gleim* (1984), Ind., 468 N.E.2d 205, 206. The evidence must support without conflict only one inference which is in favor of the defendant. *Id.* at 207. If there is any probative evidence or reasonable inference to be drawn from the evidence in favor of the plaintiff or if there is evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper. *Id.*

It is well-established that the keeper of an animal has a duty to provide for restraining and confinement of that animal. *Blake v. Dunn Farms* (1980), 274 Ind. 560, 413 N.E.2d 560, 563. Under our common law, all dogs, regardless of breed or size, are presumed to be harmless, domestic animals. *Royer v. Pryor* (1981), Ind.App., 427 N.E.2d 1112, 1117. Nonetheless, the owner of a dog is bound to know the natural propensities of dogs, and if these propensities are the kind which reasonably might be expected to cause injury, the owner must use reasonable care to prevent such injuries from occurring. *Alfano v. Stutsman* (1984), Ind.App., 471 N.E.2d 1143, 1145. An owner or keeper who fails to exercise such reasonable care may be liable in negligence for the manner of keeping and controlling the dog. *Burgin v. Tolle* (1986), Ind.App., 500 N.E.2d 763, 766.

In addition, the presumption that a dog is a harmless domestic animal is overcome by evidence of a known or dangerous propensity as shown by specific acts of the particular animal. *Doe v. Barnett* (1969), 145 Ind.App. 542, 551, 251 N.E.2d 688, 694. A dangerous propensity is a tendency of the animal to do any act which might endanger the safety of persons or property in a given situation. *Id.* When the owner or keeper has such knowledge, he is obligated to use reasonable care to prevent the animal from causing injury or damage. *Alfano,* 471 N.E.2d at 1145.

Thus, whether the owner or keeper of the animal is aware of any vicious propensity, the legal description of the duty owed is the same: that of reasonable care under the circumstances. Reasonable care requires that the care employed and the precautions used be commensurate with the danger involved under the circumstances of a particular case. *Alfano,* 471 N.E.2d at 1145. The safeguards to be used, the precautions to be observed and the foresight to be exercised differ in each case, and are usually matters to be resolved by the jury. Thus, as the Court of Appeals correctly noted here, "[t]he importance of determining whether the dog had vicious propensities of which the owner reasonably should have known therefore lies not in determining whether a duty existed, but rather in assessing whether the owner's conduct sufficiently discharged his duty." 605 N.E.2d at 789.

Any given method of restraining a dog may or may not be sufficient under the particular facts of a particular case. *Compare, Alfano,* 471 N.E.2d at 1145–46 (as a matter of law, owner used reasonable care by restraining dog on a chain) *with Keane v. Schroeder* (1970), 148 Ind.App. 131, 147–49, 264 N.E.2d 95, 105 (directed verdict for owner was erroneous even though dog was chained inside owner's fenced yard).

A duty also arises by virtue of Lowe's ownership and possession of the premises. *Keane,* 148 Ind.App. at 141, 264 N.E.2d at 100. Meter readers are considered invitees. *See Rink v. Lowry* (1906), 38 Ind.App. 132, 136, 77 N.E. 967, 968 (telephone repairman); *see generally* J.D. Perovich, Annotation, *Liability of Owner or Operator of Premises for Injury to Meter Reader or Similar Employee of Public Service Corporation Coming to Premises in Course of Duties,* 28 A.L.R.3d 1344 (1969). A landowner owes an invitee

a duty to exercise reasonable care for his protection while he is on the landowner's premises. *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637, 639. The duty extends not only to harm caused by a condition of the land, but also to activities being conducted on the land, such as maintaining a domestic animal. *Martin v. Shea* (1984), Ind., 463 N.E.2d 1092, 1094–96.

 Against this legal backdrop, we find evidence from which the jury could have concluded that Lowe had not exercised reasonable care in controlling Travis. The evidence showed that Lowe knew meter readers would be coming to the property, and that if Travis were outside, he would be in the area where the meter reader would need to be. Ross was properly upon the premises doing his job as a meter reader.

Relying on *Alfano*, 471 N.E.2d 1143, the courts below found that Lowe was not negligent in the way he penned his dog. The facts in *Alfano*, however, are distinguishable. In *Alfano*, the dog was chained in the yard and did not escape. Here, the dog was "penned" inside the house, and did escape to attack Ross. In addition, we note that chaining a dog and confining it behind a fence in the yard is not, as a matter of law, necessarily sufficient. *See Keane*, 148 Ind.App. at 147–49, 264 N.E.2d at 104.

The Court of Appeals also rejected Ross's argument that Emily's negligence, if any, could be imputed to Lowe. 605 N.E.2d at 790–91. The Court of Appeals correctly noted that a child's negligence may be imputed to her parent "where the parent entrusts the child with an instrumentality which, because of the child's lack of age, judgment, or experience, may become a source of danger to others." 605 N.E.2d at 791, citing *K.C. v. A.P.*, 577 So.2d 669, 671 (Fla.Dist.Ct.App.1991). There was evidence here from which the jury could have concluded that Emily lacked the judgment and experience necessary to keep Travis from being a source of danger to invitees, *viz*, Lowe's testimony that he was concerned that his children might not be able to control Travis. This evidence raises a question of fact about whether Emily's negligence is imputable to Lowe pursuant to the rule of law set forth above.

The jury should have been allowed to resolve these factual issues.

### Conclusion

Accordingly, we grant transfer, vacate the opinion of the Court of Appeals, reverse the trial court, and remand this case for a new trial.

SHEPARD, C.J., and DeBRULER and DICKSON, JJ., concur.

GIVAN, J., dissents, with separate opinion.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in this case. The Court of Appeals opinion, reported at 605 N.E.2d 786, is well written and I believe correctly applies the law to the facts in this case. I would adopt that opinion in its entirety as my dissent.

I would affirm the trial court.