Tamara **COOK**, Appellant–Defendant,

v.

Kenneth **WHITSELL–SHERMAN**, Appellee–Plaintiff.

No. 48A04–0111–CV–493.

Court of Appeals of Indiana.

July 24, 2002.

Kevin C. Tyra, Doris L. Sweetin, Tyra & Collesano, P.C., Indianapolis, IN, Attorneys for Appellant.

Richard Walker, Anderson, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

· Tamara Cook challenges the trial court's determination that she is liable for injuries that occurred when her dog bit Kenneth Whitsell–Sherman. Cook also argues that the trial court erred in admitting evidence of potential future medical treatment for Whitsell–Sherman's injuries. Because we find that the trial court erred in concluding that Cook was negligent per se for Whitsell–Sherman's injuries, we reverse and remand.

### Facts and Procedural History

On July 31, 1998, Whitsell–Sherman was delivering mail as a letter carrier for the United States Postal Service when he arrived at the home of Marva and Joseph Hart (collectively, the Harts). The Harts' residence had a fully fenced-in yard with a mailbox on the outside of the fence, which allowed for a postal carrier to deliver the mail without having to enter the yard. On that day, the Harts were taking care of Cook's eight-year old Rottweiler dog while Cook was out of town.

When Whitsell–Sherman arrived at the residence, the Harts were both outside the fence on the sidewalk talking, and their daughter was also outside the fenced-in yard holding the Rottweiler by a leash. Whitsell–Sherman delivered the Harts' mail and started to step around Marva. At that point, the Rottweiler lunged forward and bit Whitsell–Sherman on the hand. The Harts' daughter was no longer holding onto the leash. After a short time, the Rottweiler released Whitsell–Sherman's left hand, and the Harts provided Whitsell–Sherman with a towel to control bleeding until emergency assistance arrived and took him to the hospital. As a result of the dog bite, Whitsell–Sherman sustained injury to his left hand causing him to incur $3,491.71 in medical bills and $120 in lost wages.

Prior to the incident, the Rottweiler had not demonstrated any aggressive or inappropriate behavior. Cook owned the Rottweiler beginning in November 1990 when the dog was an eight-week-old puppy. When Cook would go on vacation she would board the Rottweiler at a boarding kennel where Marva worked. In 1994, Cook moved to a different house where she could no longer have the Rottweiler, and the Harts agreed to take the dog. In 1997, Cook took the Rottweiler back, but the Harts continued to take care of the dog at their home whenever Cook had to leave town.

On July 28, 2000, Whitsell–Sherman filed suit against Cook and the Harts for damages from the bite. On October 23, 2000, Cook filed her Answer to Plaintiff's Complaint and Cross-claim in which she denied liability, asserted that Whitsell–Sherman's injuries were caused by his own fault, and claimed that she was entitled to indemnification from the Harts if a judgment was entered against her. After the Harts failed to appear in the case and defend themselves, Cook filed a Motion for Default Judgment against them on August 31, 2001. The trial court granted Cook's Motion for Default on September 5, 2001.

On September 21, 2001, a bench trial was held on this action. During the bench trial Whitsell–Sherman introduced evidence of his lost wages, current medical expenses, possible future medical expenses, and pain and suffering. During the course of the trial, the trial court also granted Whitsell–Sherman's oral request for a default judgment against the Harts. At the conclusion of the bench trial, the court took the matter under advisement. On October 11, 2001, the trial court issued

its Findings of Fact and Conclusions of Law in which it determined:

1. That pursuant to I.C. 15–5–12–1, Plaintiff need not meet the common law burden of proving that Cook had prior knowledge of the viciousness of her dog.

2. That a clear and unambiguous reading of I.C. 15–5–12–2 requires a determination that Cook is the owner of the dog that attacked Plaintiff.

3. That Cook is liable for the injuries suffered and damages incurred by the Plaintiff, Kenneth Whitsell–Sherman, under the doctrine of negligence per se and pursuant to the provisions of I.C. 15–5–12–1.

4. That Plaintiff, Kenneth Whitsell–Sherman's estimated future medical expenses are admissible pursuant to IRE 413.

Appellee's App. p. 3–4. The trial court then entered judgment "against the defendants, Tamara Cook, Joseph Hart and Mara [sic] Hart, jointly and severally, in the sum of eighty seven thousand dollars ($87,000.00) plus costs." Appellant's App. p. 9. This appeal ensued.

### Discussion and Decision

Cook challenges the trial court's determination that she was negligently liable for Whitsell–Sherman's damages. More specifically, Cook argues that the trial court erred in applying Indiana Code § 15–5–12–1 when it found Cook negligent per se as a non-custodial owner of a dog that attacked a United States Postal Service employee. Cook also argues that the trial court erred in admitting evidence of potential future medical treatment for Whitsell–Sherman's injuries. We address each argument in turn.

### I. Indiana Code § 15–5–12–1

Because Whitsell–Sherman is an employee of the United States Postal Service and was carrying out his duties when he was attacked by Cook's dog, this case is governed by Indiana Code § 15–5–12–1. Indiana Code § 15–5–12–1 provides:

> If a dog, without provocation, bites any person who is peaceably conducting himself in any place where he may be required to go for the purpose of discharging any duty imposed upon him by the laws of this state or by the laws or postal regulations of the United States of America, the owner of such dog may be held liable for any damages suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness.

Cook brings two arguments relating to this statute. Cook argues that the statute should not apply to her because she was a non-custodial owner of the dog at the time of the attack. Cook also asserts that the trial court erred in finding that she violated Indiana Code § 15–5–12–1 and should therefore be liable under the doctrine of negligence per se.

### A. Non-custodial Owner

Cook's first argument is that under the relevant statute in this case, she should not be found liable for damages resulting from the dog attack because she was a non-custodial owner of the dog at the time of the attack. In establishing the applicability of Indiana Code chapter 15–5–12, Indiana Code § 15–5–12–2 provides: "As used in this chapter, "owner" means the owner of a dog. The term includes a possessor, keeper, or harborer of a dog." Cook argues that because Indiana Code § 15–5–12–2 includes a "possessor, keeper, or harborer" under the term of "owner," the statute should be read to apply only to individuals who are in control of the dog at the time of an attack, which would exclude non-custodial owners. Therefore, Cook asserts that the statute would not apply to her. We disagree.

When interpreting the meaning of a statute, this court is guided by well-established rules of statutory construction. *Bringle v. State*, 745 N.E.2d 821, 826 (Ind. Ct.App.2001), *trans. denied*. A statute should be construed to ascertain and give effect to the expressed intention of the legislature by giving the words and phrases their common and ordinary meaning. *Id.* While we agree that the definition of "owner" under Indiana Code § 15–5–12–2 includes a greater class of individuals than would fall under the common and ordinary meaning of the word, this does not mean that the word "owner" does not also receive its common meaning under the statute. The Indiana General Assembly did not qualify the definition of "owner"; in fact the General Assembly gave "owner" a more expansive definition then it would typically receive. Therefore, on the face of the statute we are unable to see why a non-custodial owner should not be considered an "owner".

In support of her argument, Cook also directs us to *Vetor by Weesner v. Vetor*, 634 N.E.2d 513 (Ind.Ct.App.1994), a general dog bite case not governed by Indiana Code chapter 15–5–12, in which this Court found that the defendant could be found liable if he was found to be the dog's keeper even though his son owned the dog. 634 N.E.2d at 515–16 n. 3. We do not see how this case supports Cook's argument. While the court in *Vetor* determined that a keeper could be found liable for the damages resulting from a dog that he did not own, it did not exclude the possibility that the dog's owner could also be found liable. *Id.* The decision in *Vetor* simply holds that even under the common law, liability for a dog attack will include a class of individuals greater than the actual owner of the dog. *Id.*

Cook admits that she is the owner of the Rottweiler that attacked Whitsell–Sherman. The fact that the dog was not in her custody at the time of the attack makes no difference with regard to Indiana Code chapter 15–5–12. Indiana Code § 15–5–12–2 provides that the chapter applies to a dog's possessor, keeper, or harborer as well as the dog's actual owner. Therefore, we find that Indiana Code chapter 15–5–12 applies to Cook because she was the owner of the dog that attacked a United States postal worker while he was peaceably discharging his duties.

**B. Negligence Per Se**

Cook also argues that the trial court erred in determining that she was "liable for the injuries suffered and damages incurred by the Plaintiff, Kenneth Whitsell–Sherman, under the doctrine of negligence per se and pursuant to the provisions of I.C. 15–5–12–1." Appellee's App. p. 4. In particular, Cook asserts that the trial court erred in applying the doctrine of negligence per se instead of deciding the case under the general standards of negligence. We agree.

It is well-established that the keeper of an animal has a duty to provide for restraining and confinement of that animal. *Ross v. Lowe*, 619 N.E.2d 911, 914 (Ind.1993). Under our common law, all dogs, regardless of breed or size, are presumed to be harmless, domestic animals. *Id.* However, the presumption that a dog is a harmless, domestic animal is overcome by evidence of a known or dangerous propensity as shown by specific acts of the particular animal. *Id.; see also Hardsaw v. Courtney*, 665 N.E.2d 603, 607 (Ind.Ct. App.1996), *reh'g denied*. A dangerous propensity is a tendency of the animal to do any act which might endanger the safety of persons or property in a given situation. *Id.* Even when the owner or keeper of a dog has knowledge of its dangerous propensities, "the rules of liability are based upon negligence and not strict liability." *Alfano v. Stutsman*, 471 N.E.2d 1143, 1144 (Ind.Ct.App.1984) (quoting *Doe v. Barnett*,

145 Ind.App. 542, 552, 251 N.E.2d 688, 694 (1969)). When the owner or keeper of the animal is aware of any vicious propensity, he is obligated to use reasonable care to prevent the animal from causing injury or damage. *Ross*, 619 N.E.2d at 914. Reasonable care requires that the care employed and the precautions used be commensurate with the danger involved under the circumstances of a particular case. *Id.* The safeguards to be used, the precautions to be observed and the foresight to be exercised differ in each case, and are usually matters to be resolved by the trier of fact. *Id.*

Typically, the finder of fact must assess the sufficiency of the dog owner's safeguards when determining whether the owner was negligent in a dog attack. However, when dog owners fail to restrain or contain their dogs in accordance with a statute or ordinance, the owners can be found negligent per se. *See Plesha v. Edmonds ex rel. Edmonds*, 717 N.E.2d 981 (Ind.Ct.App.1999) (finding that dog owners were negligent per se for failing to restrain their dog in violation of a city ordinance), *reh'g denied, trans. denied.* The unexcused or unjustified violation of a duty proscribed by a statute or ordinance constitutes negligence per se if the statute or ordinance is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation. *Id.* at 986.

In this case, the trial court found that Cook was negligent per se for violating a duty proscribed by Indiana Code § 15–5–12–1. However, Indiana Code § 15–5–12–1 does not proscribe a duty that can be violated. The function of Indiana Code § 15–5–12–1 is to remove the presumption that a dog is harmless in situations where an unprovoked dog bites a "person who is peaceably conducting himself in any place where he may be required to go for the purpose of discharging any duty imposed upon him by the laws of this state or by the laws or postal regulations of the United States of America." Indiana Code § 15–5–12–1 relieves qualifying plaintiffs of the burden of establishing a dog owner's knowledge of the dog's dangerous propensity, but the statute does not place any additional duties on dog owners. Because there was no statutory duty that could be violated in this case, Cook could not be negligent per se.[1]

While Whitsell–Sherman should have been relieved of the burden of establishing any former viciousness of Cook's Rottweiler in his negligence action, he still had the burden of establishing that Cook failed to exercise reasonable care to prevent the dog from causing injury or damage. In finding Cook negligent per se, the trial court improperly lowered the burden for Whitsell–Sherman to bring a successful claim. If this case had been treated as a typical negligence action, Whitsell–Sherman still may have been successful in establishing that Cook was liable for his damages; however, we are not in a position to make that determination.[2] Thus, we reverse and remand for a new trial.

---

1. In addition, Indiana Code § 15–5–12–1 allows for discretion in determining whether a dog owner should be liable for damages. The statute only states that the "owner of such dog *may* be held liable for any damages suffered by the person bitten." I.C. § 15–5–12–1 (emphasis added). The term "may" in statutes ordinarily indicates a permissive condition and discretion. *Haltom v. Bruner and Meis, Inc.*, 680 N.E.2d 6, 9 (Ind.Ct.App.1997).

Thus, we also find that Indiana Code § 15–5–12–1 does not make a dog owner liable under a theory of strict liability.

2. We do note that if the trial court finds against Cook on remand, the trial court should apportion liability for Whitsell–Sherman's damages among the parties. The trial court originally entered judgment "against the defendants, Tamara Cook, Joseph Hart

Although this issue is dispositive, we address the issue of evidence of future medical expenses as it is likely to arise on retrial.

### II. Future Medical Expenses

■ Cook argues that the trial court erred in admitting evidence of the cost of future medical treatment that Whitsell–Sherman could face as a result of his injury. Cook argues that this evidence was inadmissible because it was hearsay and because it was too speculative. We disagree.

■ Initially, we note that this Court presumes that a trial court's evidentiary rulings are correct and affords wide latitude and great deference to its decision regarding the admission of evidence. *Rowe v. State*, 717 N.E.2d 1262, 1264 (Ind.Ct.App.1999). At trial, Whitsell–Sherman introduced into evidence a letter from Community Hospital Anderson, which provided the estimated costs for two types of hand surgery; a letter from Dr. Bert Davis's office providing an estimate of what his charge would be for the surgery; a letter from Anesthesia Services, Ltd. providing estimated costs for varying lengths of anesthetic services; and a summary of Whitsell–Sherman's future medical expenses compiled by his lawyer, including an estimate of medical prescriptions over a 23.8 year life expectancy. After Cook objected to this evidence at trial, the trial court took the matter under advisement and later ruled in its Findings of Fact and Conclusions of Law, "That Plaintiff, Kenneth Whitsell–Sherman's estimated future medical ex-

penses are admissible pursuant to IRE 413." Appellee's App. p. 4.

Indiana Evidence Rule 413 provides, "[s]tatements of charges for medical, hospital or other health care expenses for diagnosis or treatment occasioned by an injury are admissible into evidence. Such statements shall constitute prima facie evidence that the charges are reasonable." *Kellett v. State*, 716 N.E.2d 975, 982 n. 3 (Ind.Ct.App.1999). Rule 413 provides for the admission of statements of medical charges, and the rule does not qualify that only statements of charges for past treatment are admissible. While Cook is free to challenge the reasonableness of those estimated charges, the statements of possible medical charges should not be excluded because they are for future treatment. Even though the future can never be confidently predicted with complete accuracy, courts in this state have not found future medical expenses to be speculative. Therefore, we find that the trial court properly admitted the evidence of Whitsell–Sherman's estimated future medical charges even though those charges and the corresponding medical treatment may never come to pass.

Judgment reversed and remanded.

RILEY, J., and MATTINGLY–MAY, J., concur.

---

and Mara [sic] Hart, jointly and severally...." Appellant's App. p. 9. However, Whitsell–Sherman's claim was subject to the Comparative Fault Act. Ind.Code § 34–51–2–1. "Under the Comparative Fault Act, liability is to be apportioned among persons whose fault caused or contributed to causing the loss in proportion to their percentages of 'fault'...." *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104, 109 (Ind.2002) (citing Ind.Code § 34–51–2–8; *Cahoon v. Cummings*, 734 N.E.2d 535, 541 (Ind.2000)). In actions under the Comparative Fault Act that are tried by the court without a jury, the trial court has the responsibility of apportioning liability. *See* Ind.Code § 34–51–2–9.