

FILED

Dec 27 2017, 8:03 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rebecca Eimerman
Zionsville, Indiana

ATTORNEY FOR APPELLEE –
COLBY HAYDUK

Brandy M. Kumfer
State Farm Litigation Counsel
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE –
TIFFANY STAFFORD

Leslie B. Pollie
Scott A. Weathers
Travis W. Montgomery
Kopka Pinkus Dolin PC
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Martin, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Colby Hayduk and Tiffany Stafford, <br> *Appellees-Defendants.* | December 27, 2017 <br><br> Court of Appeals Case No. 32A01-1705-CT-974 <br><br> Appeal from the Hendricks Superior Court <br><br> The Honorable Stephenie D. LeMay-Luken, Judge <br><br> Trial Court Cause No. 32D05-1510-CT-129 |

**Najam, Judge.**

# Statement of the Case

Michael Martin appeals the trial court's grant of summary judgment for Colby Hayduk and Tiffany Stafford on Martin's complaint, which alleged that Hayduk and Stafford had negligently failed to confine and control their dogs and that, as a direct result of their negligence, Martin was bitten by their dogs and suffered serious bodily injuries while on Hayduk's property. Martin presents a single issue for our review, which we restate as the following two issues:

1. Whether there are genuine issues of material fact that Hayduk and Stafford were negligent *per se* when they allegedly violated local ordinances regarding the ownership of dogs.

2. Whether, under the common law, there are genuine issues of material fact that Hayduk and Stafford were negligent.

We reverse and remand for further proceedings.[1]

# Facts and Procedural History

Hayduk owns a residence in Brownsburg. The house is in a rural neighborhood and is bordered on two sides by farmland and on a third side by another residence. Hayduk has two dogs and has installed an in-ground electric or

---

[1] We held oral argument in this case on November 1, 2017, at Triton Central High School in Fairland, Indiana. We thank counsel for their excellent advocacy and extend our appreciation to the faculty, staff, and students of Triton Central High School for their hospitality.

"invisible" fence that is located approximately thirty-five feet inside his property line. Hayduk's dogs wear electric collars and have never wandered beyond the electric fence.

[4] Stafford, Hayduk's girlfriend, lives in Zionsville with her five dogs. On June 30, 2015, Stafford was at Hayduk's residence with all of her dogs and both of his dogs. All five of her dogs wore electric collars and had been trained on the electric fence.

[5] On that day, after Hayduk had left his home for work, Martin entered Hayduk's property, parked in Hayduk's driveway, and walked toward the house. Martin wanted to purchase a Volkswagen truck that was parked in the driveway. The truck had a logo painted on the tailgate for a business called "Buggy Works." There were no "for sale" signs on the truck, and Martin had no other reason to believe that the truck was for sale.

[6] About fifteen to twenty feet from the front door to the residence, at least five dogs approached Martin. The dogs bit and scratched Martin, and, as a result, he sustained several injuries. Martin then left for a local hospital, and, while on his way, he called Hayduk to inquire about whether the dogs had all had their shots. During that phone call, Hayduk told Martin that there were "beware of dog" signs on his property. After the phone call, Martin drove past Hayduk's property to look for the signs and to take pictures of the property, and he noticed a "beware of dog" sign on the northwest corner of the property and another sign behind some foliage on the east side of the property by the

driveway, which was Martin's original point of entry to the property. Martin also noticed a sign in a window, but he could not determine what it said.

[7] On October 2, Martin filed a complaint against Hayduk and Stafford in which he alleged that they had negligently failed to confine and control their dogs and that, as a result, Martin was bitten and suffered serious bodily injuries. In their answers, both Hayduk and Stafford, in relevant part, raised the affirmative defense that Martin was at fault in having contributed to his injuries and that he had incurred the risk of injury when he entered Hayduk's property despite the "beware of dog" signs.

[8] Later, during his deposition, Martin discussed his phone call with Hayduk regarding the dogs. Martin testified that Hayduk had said multiple times "that's why the signs are there, that's why the signs are there." Appellant's App. Vol. II at 118. Martin went on to say: "I think [Hayduk] said, 'We have signs up. You didn't see them?' I said I obviously didn't see them." *Id*. at 118-19.

[9] In response to interrogatories regarding whether the dogs had ever bitten others, Stafford stated as follows: "In November of 2012, one of Tiffany Stafford's dogs bit her ex-husband's hand. The incident happened when Michael Stafford returned [on] leave from his military tour in Afghanistan. The dog had never met Michael Stafford." Appellant's App. Vol. II at 203. Stafford further responded that she

was bitten a few times when she first adopted one of her dogs in the summer of 2014. For the first eight months after Tiffany Stafford brought the dog home, she did not get along with other dogs and would initiate fights. On a few occasions Tiffany Stafford stepped in to break up the dogs and got bitten in the process.

*Id*.

[10] Hayduk and Stafford filed motions for summary judgment alleging that Martin was a trespasser on Hayduk's property and, therefore, they did not owe a duty to Martin other than to refrain from willfully or wantonly injuring him. They further argued that, even if they owed a duty to Martin beyond that owed to a trespasser, they were not negligent when they kept the dogs confined to the property through the use of the electric fence. Hayduk and Stafford also asserted that "[a]t the time of the alleged attack, signs were posted at the end of the driveway and in the laundry room window to the left of the garage[,] among other places." *Id.* at 85, 97.

[11] In response, Martin asserted that there were genuine issues of material fact regarding whether Hayduk and Stafford had violated local ordinances when they had failed to confine the dogs properly and had kept more dogs on the premises than permitted. In addition, Martin asserted that there was a genuine issue of material fact as to his status on the land as well as to whether Hayduk and Stafford had breached their duty of reasonable care under the circumstances. He further claimed that the "beware of dog" signs located on

the property were covered by foliage. After a hearing, the trial court entered summary judgment for Hayduk and Stafford. This appeal ensued.

## Discussion and Decision

[12] Martin contends that the trial court erred when it entered summary judgment for Hayduk and Stafford. Our standard of review is clear. The Indiana Supreme Court has explained that

> [w]e review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (alteration and omission original to *Hughley*). As the appellant, Martin has the initial burden on appeal to persuade us that the grant of summary judgment was erroneous. *Id.* However, "we carefully assess the trial court's decision to ensure that he was not properly denied his day in court." *Id.*

[13] Our Supreme Court has recently reiterated that "[s]ummary judgment is rarely appropriate in negligence cases because they are particularly fact-sensitive and

are governed by a standard of the objective reasonable person, which is best applied by a jury after hearing all of the evidence." *Kramer v. Catholic Charities of the Diocese of Fort Wayne-S. Bend, Inc.*, 32 N.E.3d 227, 231 (Ind. 2015). However, we will affirm the "trial court's entry of summary judgment if it can be sustained on any theory or basis in the record." *DiMaggio v. Rosario*, 52 N.E.3d 896, 904 (Ind. Ct. App. 2016).

To prevail on his negligence claim, Martin must prove that Hayduk and Stafford: 1) owed Martin a duty; 2) breached that duty; and 3) proximately caused Martin's injuries. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.* 62 N.E.3d 384, 386 (Ind. 2016). Here, the parties dispute the nature and extent of the duty owed to Martin both under local ordinances and under our common law. The parties also dispute whether Hayduk and Stafford breached their duty to Martin. We address each argument in turn.

## Issue One:  Negligence *Per Se*

Martin first contends that Hayduk and Stafford were negligent *per se* when they allegedly violated two local ordinances. One of those ordinances limits the number of dogs that owners may keep as pets. The other prohibits an owner from permitting his animal to be at large.

The Indiana Supreme Court has held that

> the unexcused violation of a statutory duty constitutes negligence
> *per se* "if the statute or ordinance is intended to protect the class
> of persons in which the plaintiff is included and to protect against

the risk of the type of harm which has occurred as a result of its violation."

*Kho v. Pennington*, 875 N.E.2d 208, 212-13 (Ind. 2007) (citing *Plesha v. Edmonds ex rel. Edmonds*, 717 N.E.2d 981, 987 (Ind. Ct. App. 1999)).  Further:

> [w]hen this court construes a municipal ordinance, we apply the rules applicable to statutory construction.  *City of Jeffersonville v. Hallmark at Jeffersonville, L.P.,* 937 N.E.2d 402, 406 (Ind. Ct. App. 2010) (citing *City of Indianapolis v. Campbell,* 792 N.E.2d 620, 624 (Ind. Ct. App. 2003)), *trans. denied.*  The primary rule of statutory construction is to ascertain and give effect to the intent of the statute's drafters.  *Id.* (citation omitted).  The best evidence of that intent is the language of the statute, and all words must be given their plain and ordinary meaning unless otherwise indicated by the statute.  *Id.* (citation omitted).

*Mertz v. City of Greenwood*, 985 N.E.2d 1116, 1121-22 (Ind. Ct. App. 2013).

## Four-Dog Maximum Ordinance

[17]   Martin first asserts that Hayduk and Stafford were negligent *per se* when they violated a local ordinance that limits the number of dogs that they may keep as pets.  Section 90.04 of Title IX of the Code of Ordinances for the Town of Brownsburg states that

> [i]t is illegal and unlawful for any person . . . to keep any of the following on any premises in the Town in numbers consisting of more than a combined total of eight indoor and/or outdoor pets, and limited further to a maximum of four dogs . . . , six months of age or older, kept for the purposes of personal enjoyment as pets, all of which have been sterilized (spayed or neutered) or more than a combined total of three dogs . . . , six months of age

or older, kept for the purposes of personal enjoyment as pets, that have not been sterilized.

Martin contends that Stafford and Hayduk violated that ordinance when they allowed seven dogs on the property at the time Martin was injured. However, it is apparent from the plain language of the ordinance that the risk of harm that the ordinance seeks to prevent is a risk to public health, not a risk of personal injuries caused by the animals. The ordinance limits the number of pets that can be kept on the premises "for the purposes of personal enjoyment," which is to prevent a pet owner from accumulating more pets than he can care for properly. Further, because the ordinance is more restrictive based on the reproductive capacities of pets kept on the premises, its purpose is also to control the animal population, which is a public health concern. In any event, there is nothing in the ordinance to suggest that it is intended to protect against the type of harm Martin sustained, and Martin has not shown that Hayduk and Stafford were negligent *per se* by violating this ordinance. *See Kho,* 875 N.E.2d at 212-13.

## At-Large Ordinance

Martin next contends that Hayduk and Stafford violated a town ordinance that prohibits the owner of an animal from permitting that animal to be at large. Section 90.05 of Title IX of the Code of Ordinances for the Town of Brownsburg states that "[n]o owner of any animal, licensed or unlicensed, shall permit the animal to be at large." Section 90.02 defines "at large" as

[a]ny animal, licensed or unlicensed, found off the premises of its owner *and not under the control of a competent person* . . . or on a leash or "at heel" beside a competent person and obedient to that person's command.

(Emphasis added.)

[20] Martin contends that Stafford's dogs were "at large" and off the premises, in violation of that ordinance, because they were found in Brownsburg instead of at Stafford's home in Zionsville. He further contends that there "is no evidence that at any time any dogs which were maintained on the property were under the control of a competent person, restrained within a motor vehicle . . . on a leash[,] or 'at heel' beside a competent person and obedient to that person's command." Appellant's Br. at 11.

[21] But the plain language of this ordinance indicates that its purpose is to prevent dogs from roaming freely. Here, the dogs were not roaming freely, but Hayduk and Stafford had successfully confined the dogs to Hayduk's property with the electric fence. As such, the dogs were not "at large" but were under the control of a competent person. Martin has not shown that Hayduk and Stafford were negligent *per se* with respect to either of the local ordinances.

## Issue Two: Common Law Negligence

[22] Martin next contends that the trial court erred when it granted summary judgment in favor of Hayduk and Stafford because genuine issues of material fact exist as to whether Hayduk and Stafford were negligent. Specifically, Martin contends that genuine issues of material fact exist regarding the nature

and the extent of the duty Hayduk and Stafford owed to Martin and whether they breached that duty.

## Duty

Martin asserts that the trial court erred when it granted summary judgment in favor of Hayduk and Stafford because a genuine issue of material fact exists as to whether Martin was an invitee or a trespasser. However, in dog-bite cases, this court "has consistently applied a negligence standard without regard to whether the victim was an invitee, licensee, or trespasser on the land on which the dog was maintained." *Plesha,* 717 N.E.2d at 987. The standard of care owed by a dog owner to a third party is simply a duty of reasonable care. *Id.* Thus, whether Martin was an invitee, licensee, or trespasser on the property is not a material question in this appeal. Rather, it is settled that, as a matter of law, Hayduk and Stafford owed Martin the duty of reasonable care. *Id.*

## Breach of Duty

### Electric Fence

Martin next contends that the designated evidence establishes a genuine issue of material fact regarding whether Hayduk and Stafford breached their duty of reasonable care under the circumstances. In Indiana,

> [t]he common law presumes that all dogs, regardless of breed or size, are harmless. *Poznanski v. Horvath,* 788 N.E.2d 1255, 1257 (Ind. 2003); *Ross v. Lowe,* 619 N.E.2d 911, 914 (Ind. 1993). This presumption can be overcome by evidence of a known vicious or dangerous propensity of the particular dog. *Ross,* 619 N.E.2d at 914. The owner or keeper of a dog who knows of any vicious

propensity is required to use reasonable care in those circumstances to prevent the animal from causing injury. *Id.* Furthermore, the owner of a dog is expected to use reasonable care to prevent injury that might result from the natural propensities of dogs. *Id.* "Thus, whether the owner or keeper of the animal is aware of any vicious propensity, the legal description of the duty owed is the same: that of reasonable care under the circumstances." *Id.*

*Cook v. Whitesell-Sherman*, 796 N.E.2d 271, 275 (Ind. 2003). "A dangerous propensity is a tendency of the animal to do any act which might endanger the safety of persons or property in a given situation." *Ross*, 619 N.E.2d at 914.

[25] In their motions for summary judgment, Hayduk and Stafford each asserted that they did not breach their duty of care to Martin because they had an electric fence around the property and they had trained all of the dogs on the fence. On appeal, Martin asserts that the designated evidence shows that some of the dogs had a known vicious or dangerous propensity and, as such, the use of the electric fence did not in itself satisfy Hayduk and Stafford's duty of care to others on the premises.

[26] This court has previously addressed what measures a dog owner must take to fulfill his duty of reasonable care where a dog has known dangerous propensities. In *Ross*, the defendant, Lowe, confined his dog either to his house or back yard, which contained a six-foot-high wooden fence. A postal worker noticed that Lowe's dog became very agitated when the postal worker approached the house and the dog would jump up and down and would strain against the window screen or the fence. One day, a meter reader arrived at

Lowe's home to read the meter when Lowe had left his dog in the care of his twelve-year-old daughter. The meter reader used a hand-held computer that warned him of any problems at a given house. Lowe's house was coded as "having a 'bad dog.'" *Id*. at 913. As such, the meter reader asked Lowe's daughter to confine the dog to the house, and he then entered the back yard. The dog escaped through the storm door into the back yard, jumped on the meter reader, and knocked him down. The meter reader sustained a dislocated shoulder and other injuries, and he sued Lowe. Following a judgment on the evidence, the Indiana Supreme Court held that confining a dog behind a fence is not, as a matter of law, necessarily sufficient to establish that a dog owner exercised reasonable care in controlling the dog. *Id*. at 915.

[27] Here, Martin asserts that the designated evidence shows a genuine issue of material fact regarding whether the dogs had vicious or dangerous propensities. We must agree. It is possible for the trier of fact to conclude from the designated evidence that Stafford knew of the vicious or dangerous propensities of one or more of her dogs as her dog had attacked her ex-husband, had bitten her a few times, and had bitten other dogs. Here, a reasonable fact-finder could conclude that one or more of Stafford's dogs were known for their vicious or dangerous propensities and that confining the dogs to the property using only an electric fence was not sufficient under the circumstances. Thus, a reasonable fact-finder could conclude that Hayduk and Stafford breached their duty of reasonable care under the circumstances when they let the dogs roam freely on the property despite those propensities. *See, e.g.*, *id*.

[28] In their motions for summary judgment in the trial court, Hayduk and Stafford asserted that Martin incurred the risk of injury when he entered the property despite the "beware of dog" signs.[2] We note that, since Indiana's adoption of the Comparative Fault Act, there has been some question about the application of the doctrine of incurred risk. Specifically, there have been questions about whether that doctrine wholly bars a plaintiff's recovery by negating a duty owed to the plaintiff or whether it instead goes to the allocation of fault.

[29] The Indiana Supreme Court provided clarity on this issue in *Pfenning v. Lineman*, 947 N.E.2d 392 (Ind. 2011). In *Pfenning*, the Court held that

> [u]nder Indiana's Comparative Fault Act, a plaintiff's recovery will be diminished or precluded depending upon the degree of the plaintiff's own fault. *See* Ind. Code §§ 34-51-2-5, -6. Such fault includes "any act or omission that is negligent, willful, wanton, reckless, or intentional toward the person or property of others. The term also includes unreasonable assumption of risk not constituting an enforceable express consent, *incurred risk*, and unreasonable failure to avoid an injury or to mitigate damages." Ind. Code § 34-6-2-45(b).

*Id*. at 399-400 (emphasis added). Thus, to resolve the issue of liability for a tort in Indiana, "a foremost consideration must be the Indiana General Assembly's

---

[2] While incurred risk was not briefed by the parties on appeal, this issue was raised in the motion for summary judgment in the trial court, the court entered a general judgment in favor of Hayduk and Stafford, and we will review the record on appeal to determine if the grant of summary judgment can be sustained on any theory or basis in the record. *DiMaggio*, 52 N.E.3d at 904. We will also review the record on appeal to ensure that the nonmoving party was not denied his day in court. *Hughley*, 15 N.E.3d at 1003.

enactment of a comparative fault system and its explicit direction that 'fault' includes assumption of risk and incurred risk." *Id.* at 403 (quoting I.C. § 34-6-2-45(b)).

[30] The *Pfenning* Court further stated that "[i]ncurred risk . . . cannot be a basis to find the absence of a duty on the part of the alleged tortfeasor." *Id.* at 400. However, "'[w]hile a plaintiff's conduct constituting incurred risk thus may not support finding a lack of duty, such conduct is not precluded from consideration in determining breach of duty.'" *Id.* (quoting *Smith*, 796 N.E.2d at 245). A "[b]reach of duty usually involves an evaluation of reasonableness and thus is usually a question to be determined by the finder of fact in negligence cases." *Id.* at 403.

[31] In the present case, the question of incurred risk is, in effect, a question of whether and, if so, to what extent, Martin had any contributory fault when he entered the property notwithstanding the "beware of dog" signs. "The concept of incurred risk (and its analogue, assumption of risk) is centered on a plaintiff's 'mental state of venturousness' and 'demands a *subjective analysis of actual knowledge*.'" *Id.* at 400 (quoting *Smith*, 796 N.E.2d at 244) (emphasis added). Thus, to determine whether Martin incurred the risk of his injuries, we must assess whether the designated evidence shows that Martin actually knew that dogs were on the premises when he entered.

[32] It is undisputed that there were at least three "beware of dog" signs on the property. However, during his deposition, Martin testified that, "I think

[Hayduk] said, 'We have signs up. You didn't see them?' I said I obviously didn't see them." Appellant's App. Vol. 2 at 119. That is, Martin's deposition testimony, which was within the designated evidence, creates a genuine issue of material fact with respect to whether he had actual knowledge that there were dogs on the property when he entered. And our Supreme Court has made clear that self-serving testimony, by itself, can be sufficient to defeat summary judgment. *Hughley*, 15 N.E.3d at 1004.

[33] Martin's deposition testimony notwithstanding, it is undisputed that Martin entered the property via the driveway. A photograph of the "beware of dog" sign at the end of the driveway appears to show that the sign at that location was obscured by foliage. Appellant's App. Vol. II at 169. The presence of a warning sign covered with foliage would defeat the purpose of the sign, and a trier of fact could conclude that a person entering the property would not have had actual knowledge of the risk because the sign was obscured.

[34] While there were other signs, the designated evidence does not establish as a matter of law that Martin observed them. Thus, there is a genuine issue of material fact concerning whether Martin had actual knowledge of the risk of the dogs when he entered the property. We note, however, that the designated evidence does show that Martin saw the signs when he returned to the property. It is for a jury to decide whether, considering all of the evidence, Martin's testimony that he did not observe the signs before he entered the property is credible. The jury may conclude that a reasonable person would have seen the signs and, as such, that Martin's assertion that he did not see the signs lacks

credibility. These questions of fact cannot be answered as a matter of law on summary judgment.

## Conclusion

[35] We reverse the trial court's entry of summary judgment for Hayduk and Stafford. We hold that Martin has not shown that Hayduk and Stafford were negligent *per se* for violating the Brownsburg ordinances, but there are genuine issues of material fact regarding whether Hayduk and Stafford breached their duty to Martin and whether Martin incurred the risk of injury. Thus, we reverse the trial court's entry of summary judgment for Hayduk and Stafford and remand for further proceedings.

[36] Reversed and remanded for further proceedings.

Baker, J., and Altice, J., concur.